UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTINA ELWELL,
Plaintiff,

v.

GOOGLE, INC. and
TIMOTHY ARMSTRONG,
Defendants.

Civil Action No:
05-CV-06487 (DLC) (JCF)
ECF

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND FOR DISMISSAL OF ACTION OR, IN THE ALTERNATIVE, FOR A STAY OF PROCEEDINGS PENDING ARBITRATION**

Ira K. Gross (IG 6834)
Ilene Robinson Sunshine (IS 2935), *pro hac vice*
Joshua L. Solomon (JS 5848), *pro hac vice*
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
(617) 338-2800 (phone)
(617) 338-2880 (fax)
*Counsel for Plaintiff*

September 13, 2005

# TABLE OF CONTENTS

I. **Introduction** ..... 1

II. **Argument** ..... 2

A. The Agreement Is Not A General Employment Contract That Governs All The Aspects Of Elwell's Employment With Google ..... 3

B. The Claims In This Action Do Not Involve the Interpretation, Construction, Performance Or Breach Of The Agreement ..... 7

C. Even If This Court Determined That Arbitration Were Appropriate, Dismissal Would Not Be A Proper Remedy ..... 9

III. **Conclusion** ..... 9

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CHRISTINA ELWELL,
Plaintiff,

v.

GOOGLE, INC. and
TIMOTHY ARMSTRONG,
Defendants.

Civil Action No:
05-CV-06487 (DLC) (JCF)
ECF

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND FOR DISMISSAL OF ACTION OR, IN THE ALTERNATIVE, FOR A STAY OF PROCEEDINGS PENDING ARBITRATION**

Plaintiff Christina Elwell ("Elwell") submits this opposition to Defendants' motion to compel arbitration and dismiss the action, or, alternatively, to stay the proceedings.

## I. INTRODUCTION

Elwell, the former National Sales Director of Defendant Google, Inc. ("Google"), was demoted and constructively discharged on account of her sex and pregnancy, as a result of having disclosed to Defendant Timothy Armstrong ("Armstrong"), Google's Vice President for National Sales, that she was pregnant with quadruplets. Google's and Armstrong's actions violated Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq., and the New York City Human Rights Law, Administrative Code of the City of New York, § 8-101 et seq. Elwell also alleges that Armstrong tortiously interfered with her employment at Google and intentionally caused her to suffer severe emotional distress.

Defendants have not answered the Complaint. Instead, they attempt to deprive Elwell of her right to a jury trial by asserting that she is obligated to arbitrate all of her claims pursuant to

Section 10 (the "Arbitration Clause") of the "Google Inc. Employment, Confidential Information and Invention Assignment Agreement" (the "Agreement"). See Decl. of Marina C. Tsatalis in Support of Defendants' Motion, Exhibit A.[1]

Elwell cannot be compelled to arbitrate the statutory discrimination and tort claims in this action because she has agreed to arbitrate only those disputes arising under the intellectual property and confidentiality obligations that are the subject matter of the Agreement. In any event, the Arbitration Clause is expressly limited to disputes that involve the "interpretation, construction, performance or breach" of the Agreement, and Elwell's claims involve no such disputes.

## II. ARGUMENT

Defendants' argument in favor of arbitration is a hodge-podge of broad legal propositions that are inapposite to their motion and that, frankly, are not in dispute. Elwell does not deny that there is a federal policy generally favoring the arbitration of contract disputes, see EEOC v. Waffle House, Inc., 534 U.S. 279, 289 (2002), or that discrimination claims arising under Title VII can be subject to arbitration, id. Equally axiomatic, however, is that a plaintiff cannot be deprived of a judicial forum and compelled to arbitrate *any* dispute unless she has *agreed* specifically to do so. Id. at 289 ("[N]othing in the [FAA] authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the [arbitration] agreement."); see also Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002). Thus, Defendants' motion

[1] On September 7, 2005, well after the deadline for responsive pleadings, Defendants filed an amended version of their motion, without leave of Court or request for such leave. The amended motion is thus not properly before this Court. In response to a request from Elwell's counsel that Defendants either withdraw their untimely filing or seek retroactive leave of Court to make it, Defendants replied that they did not require leave of Court because they unilaterally had determined that Elwell had not been prejudiced by the late filing. Elwell disputes Defendants' authority to relieve themselves of compliance with the rules governing this litigation or to determine whether she has been prejudiced. To avoid further delay in this instance, however, Elwell has filed this opposition consistent with the deadline established by Defendants' original filing.

merely begs the question whether *Elwell's particular agreement* with Google obligates her to arbitrate the claims in *this* case. See Waffle House, 534 U.S. at 294 ("[W]e look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement."). On that point, Defendants' memorandum is long on conclusions and short on any meaningful analysis.

**A. The Agreement Is Not A General Employment Contract That Governs All Aspects Of Elwell's Employment With Google**

The Arbitration Clause provides in relevant part as follows: "I agree that any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement, shall be settled by arbitration. . . ." Although Defendants would have the Court read the Agreement as a global employment contract that described and governed all the terms and conditions of Elwell's employment with Google, the Agreement in fact is nothing of the sort. In that regard, the Agreement is conspicuously silent as to anything that even purports to govern the terms and conditions of Elwell's employment generally: There is no mention, for example, of salary or benefits, no reference to Elwell's job duties or reporting relationship or even her position with Google. In short, the Agreement is not, and never purports to be, an "employment agreement" governing Elwell's entire relationship with Google.

A plain reading of the Agreement makes it obvious that it established and relates to *only* a narrow set of confidentiality, non-solicitation, and inventions covenants designed to protect Google's intellectual property. Specifically, the Agreement contains six substantive provisions, none of which relates in any manner to Elwell's duties and responsibilities as the manager of Google's 80-person sales force: Section 2 prohibited Elwell from disclosing certain confidential information; Section 3 (which comprises a full third of the Agreement) required Elwell to assign to Google any intellectual property that she developed during her employment, and to take

actions deemed necessary by Google to accomplish that; Section 4 prohibited Elwell from competing with Google during her employment; Section 5 required Elwell to return all of Google's property upon termination; Section 7 prohibited Elwell from soliciting Google employees for a period of time following her termination; and Section 8 required Elwell to adhere to Google's conflict-of-interest policy. The remainder of the Agreement consists of boilerplate procedural terms for implementing these limited substantive provisions (e.g., an integration clause, a severability clause, and the like). Thus, short of the word "Employment" in the title of the Agreement (which, of course, confers no substantive rights or obligations on either party), the Agreement is merely a standard confidentiality and intellectual property agreement that Google imposed on Elwell and, probably, on most of its other employees.

That the Agreement does not – and was not intended to – govern all of the terms and conditions of Elwell's employment also is manifest in the fact that it is merely "Exhibit B" to some other document or documents, which, despite their obvious significance, Defendants have not provided to the Court or, when asked, to Elwell's counsel. In light of Defendants' assertion that Elwell entered into the Agreement when she began her employment, one obvious inference is that among the missing documents is Elwell's offer of employment, which actually *does* contain and govern the terms of her employment. That inference underscores what is obvious from the face of the Agreement: it is *not* a comprehensive employment agreement that governed *all* aspects of Elwell's employment.

Defendants' argument relies on snippets of language, taken out of context, to create the illusion that Elwell's agreement to arbitrate was far broader than its plain language reflects. Indeed, apart from their mantric recitation of the term "employment agreement," the language



{B0438979; 6}

that Defendants rely on to support their conclusory statements that the Agreement relates to (and requires arbitration of) *every* aspect of Elwell's employment, is inapposite.

First, Defendants' reliance on Section 1 of the document, which recites that Elwell was an employee at will, is misplaced. At-will status is not a matter of contract between an employer and an employee; rather, it is the relationship that arises by operation of law unless *modified* by contract. Lauture v. IBM Corp., 216 F.3d 258, 262 (2d Cir. 2000). Section 1, therefore, confers *no contractual rights or obligations* on either party. To the contrary, that section merely restates the common law governing Elwell's status, and expresses Google's intent not to abrogate that status by any of the restrictions and obligations that the substantive provisions of the Agreement imposed on her.

Defendants also contend that the Agreement relates to every aspect of Elwell's employment because the introductory paragraph acknowledges that Elwell signed it "[a]s a condition of my employment" and "in consideration of my employment" with Google. This also is unavailing. As Defendants candidly admit in their memorandum, they could not enforce any of these restrictive covenants against Elwell unless they could establish that those covenants were supported by some consideration. Defendants' Memo., at 3. This introductory paragraph merely recites Elwell's employment as the consideration needed to support the various obligations that Google demanded. This recitation does *not* serve in turn either to articulate or govern the substantive terms of Elwell's employment. As with Defendants' other cherry-picked language and attenuated reasoning, this sentence cannot convert a standard confidentiality and intellectual property agreement into a general employment contract.

Defendants' third contention appears to be that the integration clause in Section 11(b) (which states that the Agreement is the entire agreement between the parties "relating to the

subject matter herein") somehow broadens the substantive scope of the Agreement. Defendants provide no explication of this point, and their contention is particularly puzzling given that the integration clause merely refers back to the contents of the Agreement itself, thereby begging the very analysis that Defendants' memorandum studiously avoids.

Defendants' final attempt to deprive Elwell of a jury trial relies on their assertion that Elwell's claims must be arbitrated as long as Defendants might interpose *some* defense that would, by itself, constitute a matter within the scope of the Arbitration Clause. Thus, Defendants tell the Court, they will defeat Elwell's discrimination and tort claims by "proving" that she was an at-will employee. Because the Agreement refers to Elwell's at-will status, the argument goes, all of Elwell's claims are now subsumed within the Arbitration Clause's coverage. This argument is simply ridiculous.

Defendants' memorandum notably lacks even a *single citation* to support the dubious proposition that defenses, as well as substantive claims, can govern arbitrability, and none exists for obvious reason. Defendants' theory, if accepted, would produce a result that contravenes the axiomatic requirement that "the clause contain[] . . . language that would have reasonably notified plaintiff that [s]he was waiving [her] right to litigate federal employment discrimination claims in federal court." Hoffman v. Aaron Kamhi, Inc., 927 F. Supp. 640, 645 (S.D.N.Y. 1996). If defenses, rather than substantive claims, were allowed to govern arbitrability, a defendant could force arbitration of virtually *any* dispute, regardless of whether the claims asserted bore any relationship whatsoever to the actual agreement to arbitrate, and regardless of how frivolous the defense might be. Such a rule would allow defendants to pervert, and effectively eliminate, the requirement of a voluntary waiver. That is, of course, exactly what Defendants have attempted here.

Defendants contend that they can defeat Elwell's discrimination and tort claims by proving that Google employed her at will. This proposition is specious, and Defendants cite not a shred of authority from this (or any other) jurisdiction supporting the notion that at-will status is a defense to any statutory discrimination claim, tortious interference claim, or claim regarding the infliction of emotional distress. See, e.g., Agugliaro v. Brooks Bros., Inc., 802 F. Supp. 956, 963 (S.D.N.Y. 1992) (rejecting an at-will defense to an intentional interference claim and noting that "if [defendant] terminated [plaintiff] for a reason which is not allowed by law, the fact that [plaintiff] was an at-will employee would be irrelevant; the termination would be unjust and improper."); Campbell v. AT&T Communications, Inc., No. 91 C 8296, 1994 WL 380620, at *3 (N.D. Ill. July 18, 1994) ("There is no 'at-will' defense to a federal discrimination complaint."), quoted in Lazaro v. Good Samaritan Hosp., 54 F. Supp. 2d 180, 185 (S.D.N.Y. 1999). Defendants' putative "defense" is nothing but a transparent attempt to force Elwell to arbitrate claims that are far outside the scope of what she agreed to arbitrate. In any event, quite apart from the frivolity of Defendants' argument, Elwell acknowledges that she was employed at will, the sole fact on which the supposed defense rests. Given this, and because none of her claims depend on that status, this "defense" could never involve the "interpretation, construction, performance or breach" of the Agreement.

The subject matter covered by the Agreement, and thus the Arbitration Clause, is specific and limited to Google's intellectual property. It is not a general employment contract governing the terms and conditions of Elwell's employment.

### B. **The Claims In This Action Do Not Involve The Interpretation, Construction, Performance Or Breach Of The Agreement**

In addition to its limited application to the subject matter contained within the four corners of the Agreement, the Arbitration Clause is further limited to disputes "arising out of or

relating to any *interpretation*, *construction*, *performance* or *breach*" of the Agreement (emphasis added). While Defendants give a passing nod to the fact that arbitrability turns on a detailed analysis of this specific language, their memorandum actually eschews that very analysis. When conducted, that analysis reflects that Elwell never agreed to arbitrate the claims raised in her Complaint.

Elwell alleges, *inter alia*, that Defendants discriminated against her on account of her sex and pregnancy, in violation of Title VII and corollary New York state and city law. No "interpretation" or "construction" of the Agreement is required to adjudicate the ultimate issue in those claims; namely, whether Defendants' actions towards Elwell were motivated by sex or pregnancy animus. Indeed, this Court and the jury can adjudicate this entire action without ever making reference to, or even reading, *any* portion of the Agreement. Similarly, Defendants cannot credibly assert that Elwell's claims involve any allegations that Google or Armstrong failed to "perform[]" or otherwise "breach[ed]" the Agreement. As Elwell is the only party on whom the Agreement imposes any obligations (she also is the only signatory), neither Google nor Armstrong *could* have failed to perform or otherwise breached the Agreement.

Defendants' memorandum carefully avoids any scrutiny of these specific limiting terms, reciting instead the rather meaningless conclusion that Elwell must arbitrate her claims in this case because the Arbitration Clause is "broad." Defendant's Memo., at 5. However, "[a]bsent some ambiguity in the agreement . . . it is the language of the contract that defines the scope of disputes subject to arbitration." Waffle House, 534 U.S. at 289. Thus, Defendants' simplistic characterization of the Arbitration Clause is irrelevant in the face of these clear, limiting terms, which on their face do not apply to the claims raised herein.

**C. Even if This Court Determined That Arbitration Were Appropriate, Dismissal Would Not Be A Proper Remedy**

The FAA expressly provides that a stay is the proper remedy for a successful motion to compel arbitration. 9 U.S.C. § 3. Dismissal is appropriate only where *all* of the claims are subject to arbitration; even then, it is not mandatory. See Lewis Tree Serv., Inc. v. Lucent Techs., Inc., 239 F. Supp. 2d 332, 340 (S.D.N.Y. 2002).

At most, only Elwell's statutory discrimination claims could be arbitrable, given the limiting language of the Arbitration Clause. Her tortious interference and emotional distress claims against Armstrong could not reasonably be viewed as "arising out of or relating to any interpretation, construction, performance or breach" of the Agreement, and Defendants do not offer any meaningful argument that they can. They merely assert, in conclusory fashion, that their anticipated "at-will defense" would apply with equal force to Elwell's tort claims and that Armstrong is entitled derivatively to any benefit that Google enjoys from the Arbitration Clause. However, as discussed above, their putative defense does not determine arbitrability and, in any event, is irrelevant to Elwell's tort claims. Defendants' pronouncement that Armstrong is entitled to avail himself of the Arbitration Clause merely begs the question whether the particular claims against him fall within the scope of that clause. On that point, Defendants are silent. The Court should not dismiss the action under any circumstances.

## III. CONCLUSION

For the reasons given herein, Plaintiff Christina Elwell requests that the Court deny Defendants' motion and allow this action to proceed on the merits. Elwell also requests a hearing on Defendants' motion.

CHRISTINA ELWELL,

By her attorneys,

/s/ Joshua L. Solomon

Ira K. Gross (IG 6834)
Ilene Robinson Sunshine (IS 2935), *pro hac vice*
Joshua L. Solomon (JS 5848), *pro hac vice*
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
(617) 338-2800 (phone)
(617) 338-2880 (fax)
igross@sandw.com
isunshine@sandw.com
jsolomon@sandw.com

Dated: September 13, 2005

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CHRISTINA ELWELL,
Plaintiff,

v.

GOOGLE, INC. and
TIMOTHY ARMSTRONG,
Defendants.

Civil Action No:
05-CV-06487 (DLC) (JCF)
ECF

**PLAINTIFF'S STATEMENT REGARDING DELAYED FILING AND REQUEST FOR LEAVE OF COURT TO MAKE FILING AFTER DEADLINE**

Pursuant to the Court's Electronic Case Filing ("ECF") procedures, Plaintiff Christina Elwell Requests leave of Court to file her Opposition to Defendants' Motion To Compel Arbitration and for Dismissal of Action or, in the Alternative, for a Stay of Proceedings Pending Arbitration after the applicable deadline.

Plaintiff's Opposition was due to be filed with the Court on September 13, 2005. During the evening and night of September 13, 2005, Plaintiff's counsel attempted several times, from different computers, to access the Court's ECF system for the purpose of timely filing Plaintiff's Opposition. Because of apparent technical problems with the ECF system, Plaintiff's counsel was unable to access that system and thus unable to make the filing on that date. Plaintiff's counsel is making the filing herewith on the morning of September 14, 2005.

In light of the technical problems with the ECF system, Plaintiff respectfully requests leave of Court to file Plaintiff's Opposition after the deadline.

CHRISTINA ELWELL,

By her attorneys,

/s/ Joshua L. Solomon

Ira K. Gross (IG 6834)
Ilene Robinson Sunshine (IS 2935), *pro hac vice*
Joshua L. Solomon (JS 5848), *pro hac vice*
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
(617) 338-2800 (phone)
(617) 338-2880 (fax)
igross@sandw.com
isunshine@sandw.com
jsolomon@sandw.com

September 14, 2005