MARINA C. TSATALIS
KORAY J. BULUT
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: MTsatalis@wsgr.com

ADRIAN T. DELMONT (AD-7010)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
12 East 49th Street
New York, NY 10017
Tel. (212) 999-5800
Email: ADelmont@wsgr.com

Attorneys for Defendants
GOOGLE INC. and TIMOTHY ARMSTRONG

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Christina Elwell,<br><br>        Plaintiff,<br><br>    v.<br><br>GOOGLE, INC. and<br>TIMOTHY ARMSTRONG,<br><br>        Defendants. | ECF CASE<br>Case No: 05-CV-06487 (DLC)<br><br>REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND FOR DISMISSAL OF ACTION OR, IN THE ALTERNATIVE, FOR A STAY OF PROCEEDINGS PENDING ARBITRATION |

I.     INTRODUCTION

Plaintiff's Opposition is based on speculation, inferences and generalizations, and on her hindsight that she wished that she had not promised to arbitrate her claims.  Based on the well established legal precedent set forth in Defendants' opening brief and below, and the broad terms of Plaintiff's Employment Agreement, Defendants respectfully submit that Plaintiff should be ordered to respect her voluntary promise to Google that she would arbitrate the claims that she has alleged.

II.    ARGUMENT

1.     **Plaintiff's Claims Are Subject To Mandatory Arbitration.**

Although Defendants will not join Plaintiff in resorting to insults, the fact is that Defendants' brief is based on the clear application of sound, relevant authority, and it establishes that her claims must be arbitrated.  The parties are in agreement that there is a strong federal policy favoring arbitration as a means of dispute resolution and that the types of claims that she has asserted can be arbitrated.  Plaintiff also does not dispute that the arbitration provision at issue is enforceable.  Plaintiff's only argument is that her claims are not within the scope of her agreement to arbitrate.  Based on the language of her Employment Agreement, Defendants disagree.

a.     **Plaintiff Voluntarily Agreed To Arbitrate Her Claims.**

Plaintiff's brief suggests repeatedly that Defendants are trying to coerce her to arbitrate and "deprive [her] of a jury trial."  Opp. at 1, 2 and 6.  However, Plaintiff does not and could not contend that she signed the Employment Agreement under duress.  The fact is that Plaintiff was free to reject the Employment Agreement, or to propose revisions to its terms.  Instead, she signed the Agreement in consideration for her employment, thereby *voluntarily agreeing* to arbitration as the only means of resolving any and all disputes arising out of or relating to her Employment Agreement.  The fact that she regrets that bargain at this point -- after deciding to assert claims and that she would somehow gain a strategic advantage from litigating her claims in court – is no basis to permit her to escape it.  Nor are Defendants seeking to compel arbitration of claims that are not covered by Plaintiff's agreement to arbitrate.  To the contrary, every claim that Plaintiff has asserted is based on her employment with Google.  The scope of the arbitration provision is very broad and encompasses these claims.

      **b. Plaintiff's Employment-Related Claims Are Covered By The Broad Terms Of The Arbitration Clause.**

  Plaintiff alleges that Defendants violated her legal rights by changing her duties, transferring her to a different position, demoting her, criticizing her performance and constructively terminating her employment.  There is no dispute that each and every one of these claims arises out of and relates to Plaintiff's employment with Google.  Just as every claim that Plaintiff asserts arises out of her employment with Google, every provision of her Employment Agreement is premised on her employment with Google.  Plaintiff, however, attempts to separate the provisions of the Agreement from her employment relationship with Google, as if they have some existence and meaning separate and apart from her employment.  Plaintiff also mischaracterizes the Employment Agreement as narrow and relating only to the protection of Google's intellectual property.

  On its face, the Agreement provides that Plaintiff would maintain the confidentiality of all intellectual property that she acquired by virtue of her <u>employment with Google</u>, that she would assign any inventions that she developed during her <u>employment with Google</u>, that she would refrain from competing with Google during her <u>employment with Google</u>, that she would refrain from soliciting Google's employees following the termination of her <u>employment with Google</u>, that she would return Google's property following her <u>employment with Google</u>, and that she would adhere to Google's conflict of interest policy during her <u>employment with Google</u>.[1]  Thus, not only is the entire Employment Agreement premised on Plaintiff's employment with Google, the Agreement is hardly narrow or limited to intellectual property.  To the contrary, the Agreement governs, among other aspects of Plaintiff's employment, the term and status of her employment, her treatment of confidential information and inventions that she worked on in her employment, competitive activities during her employment, her relationships with other employees, and her conduct at work.

---

  [1] Plaintiff asserts, without any basis or authority, that the Employment Agreement is a form that is "probably" imposed on "most of" Google's employees.  Opp. at p. 4.  Given Plaintiff's (unfounded) criticism that Google's brief was based on broad propositions and was "long on conclusions," Defendants are surprised that Plaintiff would rely on unabashed speculation in her Opposition.

Plaintiff's argument that her claims are not covered by the arbitration clause because her particular "duties and responsibilities as the manager of Google's 80-person sales force" are not set forth in the Agreement also is incorrect. Opp. at p. 3. There is no authority for the contention that an arbitration provision has to be so specific as to detail an employee's precise duties in order to cover claims relating to those duties. To the contrary, the United States Supreme Court has made clear that where, as in this case, the arbitration clause is broad, "[a]n order to arbitrate [a] particular grievance should not be denied *unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute*." AT&T Techs., Inc. v. Communications Workers of America, 475 U.S. 643, 650 (1986) (emphasis added) (quoting United Steelworkers of America v. Warrior & Gulf, 363 U.S. 574, 582-83 (1960)); Collins v. Aikman Prods. Co. v. Building Sys., Inc., 58 F.3d 16, 19 (2d Cir. 1995).

Similarly, Plaintiff's assertion that the arbitration clause had to contain language notifying her that she was waiving her right to litigate federal employment discrimination claims in order to be enforceable, is inaccurate. In the only case that Plaintiff cites for this proposition, Hoffman v. Aaron Kamhi, Inc., 927 F. Supp. 640, 645 (S.D.N.Y. 1996), the court took issue with unclear arbitration language. In addition, the Hoffman court was presented with ADA and FLMA claims—statutes that were not in existence at the time the arbitration provision was signed. Given those circumstances, the plaintiff in that case could not have knowingly waived her right to a trial by jury for these statutory rights. That is not the case in the instant matter, where there is no indication that Plaintiff, who was hired into a "high-level position" at Google, failed to recognize the broad scope of her unambiguous arbitration provision, the clear terms of which provide that it applied to "*any* dispute *arising out of or relating to*" her Employment Agreement. Compl. ¶ 6; Tsatalis Decl., Ex. A, § 10(a) (emphasis added).

In fact, the United States Supreme Court has cited with approval the First Circuit's holding that "[t]he question...is not whether the arbitration clause mentions ... any ... particular cause of action, but whether the factual allegations underlying [the plaintiff's] [claims] -- and [the defendant's] bona fide defenses to those [claims] -- are within the scope of the arbitration clause…." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 622 n.9 (1985) (quoting Mitsubishi Motors Corp., 723 F.2d 155, 159 (1st Cir. 1983). The Second Circuit has followed the Supreme Court's lead and echoed

this holding. See, e.g. Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840 (2d Cir. 1987) ("In determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the factual allegations in the complaint rather than the legal causes of action asserted."); Ins. Co. of North America v. ABB Power Generation, Inc., 925 F. Supp. 1053, 1062 (S.D.N.Y. 1996); Alemac Ins. Servs., Inc. v. Risk Transfer Inc., No. 03 CIV. 1162 (WHP), 2003 WL 22024070, at *2 (S.D.N.Y. Aug. 28, 2003). Given the broad reach of Plaintiff's Employment Agreement into virtually every aspect of her employment, and the clear presumption of arbitrability under the law, particularly in the context of such a broad arbitration provision, Plaintiff's employment-related claims must be covered by her agreement to arbitrate.

    **c.**  **This Dispute Implicates Specific Provisions In The Employment Agreement.**

In addition, there are specific provisions in the Employment Agreement that clearly relate to the particular claims that Plaintiff has asserted. Plaintiff omits the very first paragraph of the Employment Agreement in her paragraph by paragraph recitation of the rest of the provisions of the Agreement (Opp. at pp. 3-4). The first paragraph of the document, entitled "***Employment***, Confidential Information, Invention Assignment and Arbitration Agreement," clearly states that Plaintiff's employment would be at-will. (emphasis added). Contrary to Plaintiff's contention, the California Supreme Court has made clear that at-will status certainly can be established by contract. See Foley v. Interactive Data Corp., 47 Cal. 3d 654, 677 (1988) (parties are free to contract for employment at-will and statutory at-will presumption only arises when parties have made no express oral or written agreements specifying length of employment or grounds for termination). Given the clear integration clause in the Agreement in section 11(b), section 1 of the Employment Agreement does in fact establish Google's right to terminate Plaintiff without cause, and to take lesser included actions including demoting her, transferring her and changing her duties. DiGiacinto v. Ameriko-Omserv Corp., 59 Cal. App. 4th 629, 645-35 (1997) ("[T]he at-will presumption would surely apply to lesser quantums of discipline [than termination] as well.").

  As set forth in Defendants' opening brief, one of Defendants' bona fide defenses to each of Plaintiff's claims will be the fact that she was at-will employee. Defendants do not contend that Plaintiff's at-will status shields Defendants from a valid discrimination claim. However, in order to

effectively defeat Plaintiff's claims as a practical matter, Defendants will have to produce evidence establishing not only that the alleged acts were non-discriminatory, but also that they were within Google's rights as an at-will employer. To do so, Defendants will have to set forth the standard by which the events that Plaintiff is alleging should be assessed, i.e., that barring a discriminatory motive, Google had the right to change Plaintiff's duties, to demote her, to transfer her and to terminate her, and that it does not need to prove that there was cause for any of those acts. Defendants expect that there will be discovery relating to Plaintiff's at-will status and that, if Plaintiff's claims survive and go to a trial, there certainly will be a jury instruction on Plaintiff's at-will status. The so-called "dubious" proposition that defenses are relevant in determining the scope of an arbitration provision has been embraced by the United States Supreme Court. Although Plaintiff misrepresented to this Court that no case standing for that proposition exists (Opp. at p. 6), the highest court <u>Mitsubishi Motors Corp.</u> approved the First Circuit's holding that even where the arbitration clause does not mention the particular causes of action at issue, the dispute must be arbitrated where "the factual allegations underlying … bona fide *defenses* are within the scope of the arbitration clause." 473 U.S. at 622 n.9 (emphasis added).

     Additionally, the Employment Agreement specifically states that Plaintiff is required to comply with Google's Conflict of Interest Policy, which dictates certain standards of professionalism by which Plaintiff was required to conduct herself. Tsatalis Decl., Ex. A, § 8. Plaintiff's reaction to Google's proposal that she assume a different position – including threatening to take the job and "fuck it up", "make life difficult" for Google, and take a job with Yahoo, Google's competitor -- certainly implicate her compliance with Google's conflict of interest policy, which provides that employees are to:

> avoid situations that present potential conflicts of interest, either real of perceived … it is our responsibility to act at all times with the best interests of Google and our users in mind. Declaration of Marina C. Tsatalis filed herewith, Ex. A.

Plaintiff's threats, which were clearly in contravention of this Policy, formed the basis for Google's decision to put Plaintiff on the performance improvement plan that she alleges as one of the bases for her claims. Since even Plaintiff admits that her compliance with the Conflict of Interest Policy is an express term of the Employment Agreement (Opp. at p. 4), Plaintiff's claims absolutely "relate to" the Employment Agreement.

Plaintiff also attempts to cast doubt on the comprehensiveness of the Employment Agreement by referencing a hypothetical document to which the Agreement was purportedly attached as an exhibit. Although discovery has not even begun in this case, Plaintiff chastises Google for not producing the mystery document. Plaintiff, who accuses *Defendants* of "attenuated reasoning," then argues that the Court should deem this alleged document to be "missing" and make what Plaintiff refers to as "one obvious inference" that "among the missing documents" is an offer of employment. Although Plaintiff purportedly has no idea what the document is and deems it "missing," she has no qualms about representing that it "actually *does* contain and govern the terms of her employment." Opp. at p. 4 (emphasis in original). Although this bold statement of fact certainly suggests that Plaintiff has the offer letter in hand, she did not attach it as an exhibit to her Opposition (nor has she produced it to Defendants). The clear inference is that the offer letter does *not* contain Plaintiff's duties or any additional employment terms. In any event, Plaintiff's contention that the Employment Agreement was an exhibit to Plaintiff's offer letter, which "actually does contain and govern the terms of her employment," supports Defendants' Motion. If the Employment Agreement was combined with a document setting forth the remaining terms of her employment as a package, then it is even clearer that the arbitration provision was intended to govern all aspects of Plaintiff's employment.

### 2. Plaintiff's Claims Should Be Dismissed.

Plaintiff argues that two of her ten claims – tortious interference and emotional distress -- do not arise out of or relate to the Employment Agreement, and that the case should be stayed pending arbitration rather than dismissed on that basis. Opp. at 9. This argument is ill-conceived. Count IX of Plaintiff's Complaint for intentional infliction of emotional distress is based entirely on Plaintiff's other allegations. In fact, in support of this Count, she merely restates the other allegations of the Complaint and adds conclusory allegations parroting the elements of the cause of action. Compl. ¶¶ 65-68. The same is true of Count X for intentional interference with contractual business relations, which is asserted against individual defendant Timothy Armstrong. Compl. ¶¶ 69-73.

### III. CONCLUSION

For the reasons set forth above and in its opening brief, Defendants respectfully request that the Court grant its motion to compel arbitration and dismiss this action in its entirety. In the alternative,

Defendants request that this Court order Plaintiff to arbitrate her claims and stay the present proceedings until the arbitration can be completed.

Dated: September 26, 2005         WILSON SONSINI GOODRICH & ROSATI
                                   Professional Corporation


                                  By: _____/s/_____
                                       Adrian T. Delmont (AD-7010)
                                       Wilson Sonsini Goodrich & Rosati
                                       Professional Corporation
                                       12 East 49th Street
                                       New York, NY 10017

                                  *Attorneys for Defendants*
                                  Google Inc. and Timothy Armstrong