```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
CHRISTINA ELWELL,                        :
                                         :
                    Plaintiff,           :    05 Civ. 6487 (DLC)
                                         :
         -v-                             :    OPINION & ORDER
                                         :
GOOGLE, INC. and TIMOTHY ARMSTRONG,      :
                                         :
                    Defendants.          :
                                         :
-----------------------------------------X
```

APPEARANCES:

For Defendants Google, Inc. and Timothy Armstrong:
Adrian T. Deslmont
Wilson Sonsini Goodrich & Rosati
Professional Corporation
12 E. 49th Street
New York, NY 10017

Marina C. Tsatalis
Gary M. Gansle
Koray J. Bulut
Wilson Sonsini Goodrich & Rosati
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304

For Plaintiff Christina Elwell:
Ira K. Gross
Irene Robinson Sunshine
Joshua L. Solomon
Sullivan & Worcester LLP
One Post Office Square
Boston, MA 02109


DENISE COTE, District Judge:

   This Opinion considers defendants' motion to compel

arbitration in this case alleging illegal employment

discrimination and retaliation under Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the

New York State Human Rights Law, N.Y. Exec. Law § 290 et seq.

("NYSHRL"), and other claims. Elwell challenges her demotion and reduction in pay during a high-risk pregnancy. For the reasons stated below, the motion is granted.[1]

Background

All facts are as alleged in the complaint unless otherwise noted. Defendant Google, Inc. ("Google") hired plaintiff Christina Elwell ("Elwell") in 2000 as a member of its sales force. Upon joining the company, Elwell signed an "Employment, Confidential Information and Invention Assignment Agreement" (the "Agreement"). The Agreement states:

> <u>As a condition of my employment</u> with Google, Inc., its subsidiaries, affiliates, successors or assigns (together "the Company") and <u>in consideration of my employment with the Company and my receipt of the compensation now and hereafter paid to me by Company</u>, I agree to the following:
> 1. At Will Employment. <u>I understand and acknowledge that my employment with the Company is for an unspecified duration and constitutes "at-will" employment</u>. I acknowledge that this employment relationship may be terminated at any time, with or without good cause or for any or no cause at the option either of the Company or myself, with or without notice.

(Emphasis supplied.) The Agreement also contains an arbitration clause (the "Arbitration Clause"), which states:

> <u>Arbitration</u> . . . I agree that <u>any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement, shall be settled by arbitration</u> to be held in Santa Clara County, California, in accordance with the rules then in effect of the American Arbitration Association. The arbitrator may grant

---

[1] Plaintiff also moves to strike the defendants' reply brief. That motion is considered at the end of this Opinion.

2

> injunctions or other relief in such dispute or
> controversy.  The decision of the arbitrator shall be
> final, conclusive and binding on the parties to the
> arbitration.  Judgement may be entered on the
> arbitrator's decision in any court having jurisdiction.
> The Company and I shall each pay one-half of the costs
> and expenses of such arbitration, and each of us shall
> separately pay our counsel fees and expenses.

(Emphasis supplied.)  The Agreement also contains a choice-of-law clause specifying that it will be "governed by the laws of the State of California."

Defendant Timothy Armstrong ("Armstrong") is Google's Vice President for National Sales and was Armstrong's supervisor for the entire period she worked at the company.  In 2003, Elwell has promoted to the position of National Sales Director, in which she managed Google's North American sales force.  In early 2004, Armstrong praised Elwell's performance at a meeting of Google's entire sales force.

In February 2004, Elwell became pregnant with quintuplets. She told Armstrong of her pregnancy in late April 2004.  She also informed him that she had medical issues related to the pregnancy that would prevent her from traveling for some period of time. Elwell informed Armstrong that she would be able to travel again after she gave birth and discussed how her responsibilities would be handled in the meantime.  In May, Elwell lost two of her quintuplets.  At the end of that month, Armstrong informed Elwell that her position had been eliminated and that she was to be transferred to what the complaint describes as "a position in Google's operations department that had virtually no relationship to her former sales position, no direct tie to sales revenue, no

management responsibilities, and did not in any way use Elwell's 15 years of sales experience." Elwell alleges that Armstrong told colleagues that she was being transferred because she could not travel. Elwell subsequently agreed to a demotion to Director of East Coast Sales, in which she would not have to travel by plane, but Armstrong ultimately filled the Director of East Coast Sales position with someone less qualified.

On June 4, Armstrong accused Elwell of talking to others at Google about her situation. Elwell admitted that she had expressed concern that Google's decisions regarding her employment had been made on the basis of her pregnancy. The following day, Elwell was fired. On June 22, an executive in Google's California headquarters offered to rehire Elwell to the operations position Armstrong had previously discussed with her. The following day, Google's director of human resources informed Elwell's husband that Elwell had been fired improperly; she told Elwell the same thing the following day. Five days later, Elwell lost the third of her quintuplets.

Elwell returned to Google on July 19. She alleges that the position she was given was even more junior than the one Armstrong had originally discussed with her. She also alleges that Armstrong made rude comments, including that he was uncomfortable having Elwell in the office and that he would prefer she work at home.

Elwell's physician ordered her to stay at home beginning July 21 because of her high-risk pregnancy; she notified Google

4

at that time that she required a disability leave of absence. She received a commission check that was lower than usual and was informed that the discrepancy was due in part to the fact that she had received a lower performance rating than in previous quarters. While Elwell was on disability leave, she gave birth to her surviving child.

On August 18, Elwell filed a discrimination complaint with the federal Equal Employment Opportunity Commission ("EEOC"). On May 18, 2005, the EEOC issued Elwell a Notice of Right to Sue. Elwell filed her complaint in this Court on July 18, 2005, alleging employment discrimination and retaliation under Title VII against Google and Armstrong; discrimination and retaliation under the NYSHRL against Google and Armstrong; aiding and abetting discrimination and retaliation under the NYSHRL against Armstrong; employment discrimination and retaliation under the New York City Human Rights Law ("NYCHRL") against Google and Armstrong; aiding and abetting employment discrimination under the NYCHRL against Armstrong; and intentional infliction of emotional distress and intentional interference with contractual or advantageous business relations against Armstrong. Defendants filed their motion to compel arbitration on August 29, 2005.

Discussion

The law governing the enforceability of arbitration agreements was recently discussed by this Court in <u>Vaughn v. Leeds, Morelli & Brown P.C.</u>, No. 04 Civ. 8391 (DLC), 2005 WL

1949468 (S.D.N.Y. Aug. 12, 2005). The FAA was designed to "ensure judicial enforcement of privately made agreements to arbitrate." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 219 (1985). The FAA represents "a strong federal policy favoring arbitration as an alternative means of dispute resolution." JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 171 (2d Cir. 2004) (citation omitted). Therefore, "under the FAA, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" Id. (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)). The FAA requires that a contract provision to arbitrate disputes arising out of the contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Under the FAA, unless parties have unambiguously provided for an arbitrator to decide questions of arbitrability, it is for courts to decide whether the parties agreed to arbitrate. Contec Corp. v. Remote Solution Co., 398 F.3d 205, 208 (2d Cir. 2005). A court deciding a motion to compel arbitration must resolve four issues:

> [1] whether the parties agreed to arbitrate; [2] ... the scope of that agreement; [3] if federal statutory claims are asserted, ... whether Congress intended those claims to be nonarbitrable; and [4] if ... some, but not all, of the claims are arbitrable, ... whether to stay the balance of the proceedings pending

arbitration.

JLM Indus., 387 F.3d at 169 (citation omitted).

Elwell argues both (1) that her claims do not arise under the Agreement and (2) that they do not fall within the scope of the Arbitration Clause. She contends that the Agreement itself is not a general employment contract governing all aspects of her employment, but rather, that it is concerned with "a narrow set of confidentiality, non-solicitation, and inventions covenants designed to protect Google's intellectual property." She also argues that her claims do not "aris[e] out of or relat[e] to the interpretation, construction, performance or breach of [the] Agreement," as specified in the Arbitration Clause.

Regardless of which topics form the bulk of the Agreement, plaintiff's at-will employment status is clearly a subject of the Agreement -- and a prominent one at that, as it constitutes the very first item of the Agreement. Plaintiff argues, however, that because at-will employment arises by operation of law unless modified by contract, the Agreement "confers no contractual rights or obligations on either party" regarding this aspect of her employment.

In deciding whether parties to a contract agreed to arbitrate a particular matter, "courts should generally apply state-law principles that govern the formation of contracts." Mehler v. Terminix Int'l Co., 205 F.3d 44, 48 (2d Cir. 2000). The contract, the overall validity of which is not in question,

specifies that it is to be governed by California law.[2] Under California law, an "employer and employee are free to agree to a contract terminable at will or subject to limitations." Foley v. Interactive Data Corp., 47 Cal. 3d 654, 677 (1988). California's statutory presumption of at-will employment applies only "if the parties have made no express oral or written agreement specifying the length of employment or the grounds for termination." Id. It thus cannot be said that plaintiff's at-will employment status is not a subject of the Agreement at issue here.

Doubts regarding the scope of an arbitration clause should be resolved in favor of arbitration. Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452 (2003).

> Once the court has determined the threshold issue of whether an arbitration agreement exists, and that the agreement is a broad one, . . . the court must compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

Mehler, 205 F.3d at 49 (citation omitted). The Arbitration Clause in this case is undoubtedly broad. Cf. Id., 205 F.3d at 46, 49 (characterizing an arbitration clause providing for arbitration of "any controversy or claim between [the parties] arising out of or relating to the Agreement" as "precisely the kind of broad arbitration clause that justifies a presumption of arbitrability" (emphasis supplied) (citation omitted)).

"[I]n determining whether a particular claim falls within

---

[2] Defendants clearly assume in their memorandum of law that California law should be applied to interpret the Agreement. Plaintiff does not dispute this choice of law in her opposition.

8

the scope of the parties' arbitration agreement, [a court must] focus on the <u>factual allegations</u> in the complaint rather than the legal causes of action asserted."  <u>Id.</u> at 48 (citation omitted) (emphasis supplied).  Whether the actions of Google and Armstrong, its agent, in transferring Elwell to a different position and reducing her compensation were permissible alterations to the terms of the employment of an at-will employee or impermissible discrimination and retaliation are the questions that constitute the core factual dispute underlying all of plaintiff's allegations.  It is thus not possible to say that the Agreement's broad Arbitration Clause cannot be interpreted to cover plaintiff's statutory claims in this case.  The Second Circuit has indicated that Title VII claims may be arbitrated. <u>See</u> <u>Gold v. Deutsche Aktiengesellschaft</u>, 365 F.3d 144, 148 (2d Cir. 2004).

Given that plaintiff's claims against Armstrong of intentional interference with contractual or advantageous business relations and intentional infliction of emotional distress are premised on precisely the same facts as her antidiscrimination claims, they are likewise covered by the Arbitration Clause.  Because Armstrong is Google's employee, the benefit of the Arbitration Clause extends to him as well.  <u>See</u> <u>Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.</u>, 117 F.3d 655, 668 (2d Cir. 1997).

Finally, plaintiff has made a motion to strike the defendants' reply brief because it was untimely and because it is

accompanied by a document, a Google "Code of Conduct," that was submitted for the first time with the reply and was not operative at the commencement of plaintiff's employment in any event. Defendants dispute the timeliness issue, but appear to concede that the document submitted with the reply is inapplicable.[3] The brief is not stricken on timeliness grounds, but the accompanying document was not considered in the creation of this Opinion.

Conclusion

The defendants' motion to compel arbitration is granted. Plaintiff's motion to strike the defendants' reply brief is denied. Because all of plaintiff's claims are subject to arbitration, this action is stayed pending arbitration.

SO ORDERED:

Dated: New York, New York
January 30, 2006

Denise Cote
United States District Judge

---

[3] Defendants submit an earlier version of the Code of Conduct with the opposition to their motion to strike. This document was likewise not considered by the Court.