MARINA C. TSATALIS (MT-6494)
KORAY J. BULUT (KB-1074), *pro hac vice*
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: MTsatalis@wsgr.com

Attorneys for Defendants
GOOGLE INC. and
TIMOTHY ARMSTRONG

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Christina Elwell, | ) **ECF CASE** |
| Plaintiff, | ) **Case No: 05-CV-06487 (DLC)** |
| | ) |
| v. | ) **DEFENDANTS GOOGLE INC. AND** |
| | ) **TIMOTHY ARMSTRONG'S** |
| GOOGLE, INC. and | ) **MEMORANDUM OF POINTS AND** |
| TIMOTHY ARMSTRONG, | ) **AUTHORITIES IN OPPOSITION** |
| | ) **TO PLAINTIFF'S MOTION TO** |
| Defendants. | ) **LIFT THE LITIGATION STAY** |
| | ) **PENDING ARBITRATION** |
| | ) |
| | ) |

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION AND STATEMENT OF FACTS ................................................................ 1

II.  ARGUMENT.................................................................................................................... 3

   A.   Plaintiff's Motion Is Actually A Motion For Reconsideration And Should Be
        Denied As Untimely. ............................................................................................ 3

   B.   Plaintiff's Motion Should Be Denied Because She Waived Any Right To
        Challenge The Court's Order Compelling Her To Arbitrate Her Claims........ 3

   C.   Plaintiff's Purported "New" Basis For Attacking The Arbitration Clause Ignores
        The Court's Reasoning In Its Opinion Compelling Arbitration. ...................... 6

   D.   Even If Plaintiff Had Attacked The Consciability Of the Employment
        Agreement In A Timely Fashion, The Parties' Arbitration Agreement Is
        Enforceable Under California Law. .................................................................... 8

        1.   The Arbitration Agreement Is Not Procedurally Unconscionable...................... 8

             a.   The Arbitration Agreement Is Not Oppressive. ...................................... 8

             b.   The Arbitration Agreement Clearly Notified Plaintiff That She
                  Was Waiving Her Rights To The Judicial Forum. ................................ 9

        2.   The Arbitration Agreement Is Not Substantively Unconscionable. ................... 9

             a.   The Carve-Out Provision Is Codified Under California Law............... 10

             b.   The Court May Sever The Carve-Out Provision And Enforce The
                  Arbitration Agreement. ...................................................................... 10

   E.   Plaintiff's Displeasure With The Pace And Costs Of The Arbitration Proceeding
        Are Not Grounds To Invalidate Her Contractual Obligation To Arbitrate.... 12

III. CONCLUSION.............................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

24 Hour Fitness, Inc. v. Superior Court, 66 Cal. App. 4th 1199 (1998)..................................10

AGCO Corp. v. Anglin, 216 F.3d 589 (7th Cir. 2000) ...................................................... 5

AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643 (1986).............................. 6

Abramson v. Juniper Networks, Inc., 115 Cal. App. 4th 638 (2004) ................................. 5

Am. Centennial Ins. Co. v. Nat'l Cas. Co., 951 F.2d 107 (6th Cir. 1991).......................... 16

Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83 (2000) ........... 4, 10, 11, 12, 13

Baesler v. Cont'l Grain Co., 900 F.2d 1193 (8th Cir. 1990) ............................................ 16

Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213 (1985).............................................. 16

DiGiacinto v. Ameriko-Omserv Corp., 59 Cal. App. 4th 629 (1997) ................................. 7

Elevator Indus. Ass'n, Inc. v. Local 3, I.B.E.W., A.F.L.-C.I.O., No. 84 CIV. 8638 (MJL), 1985 WL 1093 (S.D.N.Y. Apr. 16, 1985)........................................................................ 14

First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995) ...................................... 6, 7

Fittante v. Palm Springs Motors, Inc., 105 Cal. App. 4th 708 (2003) ............................... 8

Fortune, Alsweet & Eldridge, Inc. v. Daniel, 724 F.2d 1355 (9th Cir. 1983) ...................... 5

Gov't of the United Kingdom v. Boeing Co., 998 F.2d 68 (2d Cir. 1993)........................... 16

Herman Miller, Inc. v. Worth Capital, Inc., No. 98-7732, 1999 WL 132183 (2d Cir. Mar. 9, 1999)........................................................................................................ 4, 5

Lagatree v. Luce, Forward, Hamilton & Scripps, 74 Cal. App. 4th 1105 (1999).................. 8

Little v. Auto Stiegler, Inc., 29 Cal. 4th 1064 (2003) .................................................... 11

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614 (1985)................. 6

Nagrampa v. MailCoups, Inc., 469 F.3d 1257 (9th Cir. 2006)......................................... 8

Opals on Ice Lingerie v. Bodylines Inc., 320 F.3d 362 (2d Cir. 2003) .............................. 5

Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys., 369 F.3d 645 (2d Cir. 2004) ................................................................................................................ 7

Rosenthal v. Great Western Fin. Sec. Corp., 14 Cal. 4th 394 (1996)................................. 9

Scott v. Pacific Gas & Elec. Co., 11 Cal. 4th 454 (1995)................................................ 7

Simula, Inc. v. Autoliv, Inc., 175 F.3d 716 (9th Cir. 1999)............................................. 7

Soltani v. W. & S. Life Ins. Co., 258 F.3d 1038 (9th Cir. 2001) ............................................. 8

Stirlen v. Supercuts, Inc., 51 Cal. App. 4th 1519 (1997) ...................................................... 8, 9

Thawley v. Turtell, 736 N.Y.S.2d 2 (N.Y. App. Div. 2001) ...................................................... 7

## STATUTES

Cal. Civ. Code § 1670.5(a) ...................................................................................................... 11

Cal. Civ. Proc. Code § 1281.8 ................................................................................................. 10

Cal. Civ. Proc. Code § 1281.8(b) ............................................................................................ 10

Cal. Civ. Proc. Code § 2025.280(a) ........................................................................................ 13

## RULES

AAA Rule 27 .............................................................................................................................. 14

AAA Rule 37 .............................................................................................................................. 15

Local Civil Rule 6.3 .................................................................................................................... 3

## I.    INTRODUCTION AND STATEMENT OF FACTS

Plaintiff Christina Elwell ("Plaintiff") agreed by contract to binding arbitration of all disputes with her employer, Google Inc. ("Google" or the "Company"), that relate to or arise out of her at-will Employment Agreement.  Rather than complying with the arbitration provisions of her Employment Agreement, Plaintiff filed an action in this Court alleging that she was demoted and terminated from her employment with Google because of her sex, pregnancy and disability, in addition to other, related claims, all of which are based on the same core facts and relate to and arise out of her employment. When Defendants asked Plaintiff to submit her claims to arbitration pursuant to her Employment Agreement, she refused on the sole basis that she believed that her claims were outside the scope of the arbitration clause.  Declaration of Marina C. Tsatalis, filed herewith ("Tsatalis Decl."), Ex. A.

Because all of the claims that Plaintiff has asserted in this case are indeed covered by her agreement to arbitrate, Defendants Google and Timothy Armstrong (jointly "Defendants") filed a Motion to Compel Arbitration on August 29, 2005, in which they argued that this action should be dismissed or stayed and that Plaintiff's claim should be adjudicated by an arbitrator in accordance with the parties' agreement.  Plaintiff opposed this motion on the grounds that, "(1) [] her claims [did] not arise under the Agreement and (2) [] they do not fall within the scope of the Arbitration Clause." Tsatalis Decl., Ex. B (p. 7).  At no time did Plaintiff attack the enforceability of the Employment Agreement containing the arbitration provision.  On January 30, 2006, in a well-reasoned, ten-page Order and Opinion, this Court granted Defendants' Motion and ordered this action stayed pending arbitration in accordance with the parties' agreement.  Id.

On February 14, 2006, Plaintiff filed a Demand for Arbitration with the American Arbitration Association ("AAA").  In an attachment to her Demand for Arbitration, Plaintiff stated "Claimant believes that the agreement and its arbitration clause are inapplicable to Claimant's civil rights and torts claims, but is proceeding with arbitration in light of the Court's order."  Again, Plaintiff did not contest the enforceability of the arbitration provisions.

The Arbitrator in this matter, Catherine Harris, Esq. ("the Arbitrator"), was appointed on June 6, 2006.  Tsatalis Decl., at ¶ 4.  Following a Case Management Conference in July 2006 and the determination of the case schedule, discovery opened in August 2006.  Id. at ¶ 5.  Because of

complications relating to another pregnancy, Plaintiff was unable to attend her deposition until November 2006, and thus the parties did not begin taking depositions until that month. Id. at ¶ 6. Between November 2006 and the close of discovery just three months later, on February 1, 2007, the parties took 26 depositions and completed their written discovery. Id. Defendants then prepared and filed a comprehensive Motion for Summary Judgment with the Arbitrator, which is currently pending. Id. Such progress can hardly be characterized as dilatory. Thus, barring the unlikely event that some of Plaintiff's claims survive Defendants' Motion for Summary Judgment, the case has been litigated in its entirety before the AAA. To date, Defendants have paid $63,975 in fees to AAA and approximately $78,000 in costs for such items as copying charges, travel, postage and court reporter services, in addition to substantial attorneys' fees. Id. at ¶ 7.

Plaintiff waited until now to file this Motion asking to have the stay lifted so that her case can proceed in Court rather than in arbitration. More than fifteen months after the Court issued its January 30, 2006 Order granting Defendants' Motion to Compel Arbitration and to Stay the Action in Court, Plaintiff asks that the Court to reconsider its ruling on the grounds that "newly produced" documents demonstrate that her claims are beyond the scope of the arbitration clause. Plaintiff also attempts to make a brand new argument that the arbitration provisions in her Employment Agreement are unenforceable, based on cases that were decided years ago, well before the Court granted Defendants' Motion to Compel Arbitration.

Defendants vigorously oppose Plaintiff's Motion not only on substantive legal grounds, but also due to the extreme injustice and prejudice that would result from depriving Defendants of the benefit of their arbitration bargain at this extremely late stage. Granting Plaintiff's Motion would permit her to wipe clean a year's worth of litigation, including extensive discovery and important rulings by the Arbitrator on the viability of her claims, and to have a sneak peek at Defendants' pending Motion for Summary Judgment, while causing a tremendous waste of resources to Defendants. Plaintiff should not be permitted to take a second bite at the apple by making arguments she was required to make in September 2005, when she opposed Defendant's Motion to Compel. Her Motion to Lift the Litigation Stay should be summarily denied.

## II.    ARGUMENT

### A.    Plaintiff's Motion Is Actually A Motion For Reconsideration And Should Be Denied As Untimely.

Plaintiff's Motion asks the Court to lift the stay that it imposed on the court action on January 30, 2006. Plaintiff does not explain whether she seeks to restart the litigation all over again, such that the parties would redo all of their discovery and everything else that has transpired in the case over the last fifteen months, or pick up in court where the case stands currently in arbitration. Moreover, since Plaintiff did not request a stay of the arbitration, if the court granted Plaintiff's Motion, the untenable result would be that the action would proceed in this Court from this point forward, while simultaneously proceeding in arbitration.

Plaintiff does not cite a single case or any other authority permitting her to file a motion to lift the stay for the reasons articulated in her Motion, nor is there any such authority. In actuality, since Plaintiff is claiming that the Court should have considered other matters and cases in determining Defendants' Motion to Compel arbitration, Plaintiff's Motion is a Motion for Reconsideration. Pursuant to Local Civil Rule 6.3, a party has ten days from the date of the entry of an order to file a Motion for Reconsideration. It has been 463 days since the Court issued its Order in this case granting Defendants' Motion to Compel and staying the court action. Thus, Plaintiff's Motion is grossly untimely and should be denied.

### B.    Plaintiff's Motion Should Be Denied Because She Waived Any Right To Challenge The Court's Order Compelling Her To Arbitrate Her Claims.

Plaintiff claims that "newly produced" documents, consisting of Plaintiff's signed offer letter from September 2000 and a draft letter from June 2004 offering her a different position within the Company, warrant reconsideration of this Court's Order compelling arbitration. Plaintiff uses these documents to reargue the very same argument she made in Opposition to Defendants' Motion to Compel Arbitration: that her claims are beyond the scope of her Employment Agreement, which she claims was merely intended to address confidentiality and intellectual proprietary issues. In addition to the substantive flaws in Plaintiff's argument, Plaintiff omits the key fact that her September 2000 offer letter, which she characterizes as a "newly produced" document, was in fact produced by Defendants

on **October 13, 2006**, seven months ago. Tsatalis Decl. ¶ 8. The June 2004 draft letter reassigning Plaintiff was produced by Defendants on **November 3, 2006**, more than six months ago. Id.

Plaintiff cannot explain why she waited so long—after the completion of comprehensive and costly discovery—to raise this argument. Defendants postulate that Plaintiff's impetus to seek this Court's review now has more to do with forum shopping given recent decisions by the Arbitrator that are unfavorable to Plaintiff. Regardless of the reason, Plaintiff has waived her ability to challenge the arbitral forum by her delay in raising her arguments and her continued active participation in the arbitration in the interim. Herman Miller, Inc. v. Worth Capital, Inc., No. 98-7732, 1999 WL 132183 (2d Cir. Mar. 9, 1999) (A party may be found to have waived its objection to arbitrability if it participates extensively in arbitration proceedings without asserting its specific objections in a timely fashion).

In addition to attempting to reargue the scope of her Employment Agreement based on documents she received long ago, Plaintiff raises the wholly new legal argument that her agreement to arbitrate is not enforceable. Whether it was due to ineffective assistance of counsel or a deliberate decision not to make the argument, Plaintiff did not raise unconscionability *at all* either in her written correspondence to Defendants refusing their request to arbitrate pursuant to the Employment Agreement or in her Opposition to Defendants' Motion to Compel Arbitration. Instead, in her August 25, 2005 letter responding to Defendants' request to arbitrate, Plaintiff's counsel stated only that Plaintiff refused to honor her contractual agreement to arbitrate based on her contention that her claims were beyond the scope of the arbitration provision: "That agreement only provides for the arbitration of disputes concerning the interpretation, construction, performance or breach of the agreement itself. The civil action ... involves no such issues." Tsatalis Decl., Ex. A. Accordingly, that was the only issue briefed by Defendants in their Motion to Compel and the only issue that the Court considered. Plaintiff's Opposition to Defendants' Motion to Compel was similarly limited to this scope issue. See Tsatalis Decl., Ex. B (Jan. 30, 2006 Order, Hon. D. Cote, at 7).

Moreover, Plaintiff's new theory that the arbitration provision is not enforceable because it is unconscionable relies on case law that existed long before she filed her Opposition on September 13, 2005. For example, the Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83 (2000) and

<u>Abramson v. Juniper Networks, Inc.</u>, 115 Cal. App. 4th 638 (2004) cases were decided in 2000 and 2004, respectively. Plaintiff provides no explanation as to why she chose not to raise this issue or to rely on these cases in her Opposition to Defendants' Motion to Compel.

Notably, on November 6, 2006, at the end of the first day of Plaintiff's deposition and before any other depositions had been taken in the case, Plaintiff's counsel took Defendants' counsel aside and stated her intent to make a motion to get the case back into court, stating: "this is all just a dress rehearsal" given her belief that the arbitration agreement is not enforceable. Tsatalis Decl., ¶ 9. That was the first time that Plaintiff gave any indication that she believed the arbitration agreement was unenforceable. <u>Id.</u> Thereafter, Plaintiff inexplicably continued to participate fully and actively in the arbitration for another six months, taking fourteen depositions herself and defending twelve depositions by Defendants, propounding 198 Document Requests, demanding and receiving more than 1,200 documents from Defendants, and filing a number of discovery motions. <u>Id.</u> at ¶ 10. Not only is discovery completed, but Defendants have filed a comprehensive Motion for Summary Judgment with the arbitrator, which is currently pending. <u>Id.</u> at ¶ 11.

The Court should not permit Plaintiff's extremely belated effort to reargue Defendants' Motion to Compel Arbitration, which was filed almost *two years ago* on August 29, 2005, or to introduce new legal arguments based on cases that were decided long before the Motion was filed. Plaintiff's failure to timely assert her arguments, while vigorously participating in the arbitration proceedings in the interim, constitutes a clear waiver. <u>See e.g.</u> <u>Opals on Ice Lingerie v. Bodylines Inc.</u>, 320 F.3d 362, 368 (2d Cir. 2003) (citing <u>AGCO Corp. v. Anglin</u>, 216 F.3d 589, 593 (7th Cir. 2000) ("If a party willingly and without reservation allows an issue to be submitted to arbitration, he cannot await the outcome and then later argue that the arbitrator lacked authority to decide the matter.")); <u>Fortune, Alsweet & Eldridge, Inc. v. Daniel</u>, 724 F.2d 1355, 1357 (9th Cir. 1983) (unjust to permit appellant to challenge arbitration, after voluntary participation for several months, shortly before arbitrator's decision); <u>Herman Miller</u>, 1999 WL 132183, at *1 (permitting party to stay arbitration on basis of objection to arbitrability because "little of a substantive nature occurred in the interim").

**C.    Plaintiff's Purported "New" Basis For Attacking The Arbitration Clause Ignores The Court's Reasoning In Its Opinion Compelling Arbitration.**

Even if the Court were to find that these compelling facts do not constitute a waiver, Plaintiff's argument ignores the reasoning of the Court's January 30, 2006 Order compelling arbitration. Plaintiff devotes a large portion of her Motion to her argument that her September 2000 offer letter demonstrates that the Employment Agreement was not the only document governing her employment relationship with Google. Plaintiff made this same argument in her original Opposition to Defendants' Motion to Compel Arbitration and the Court rejected it, finding that the Employment Agreement's broad arbitration clause covered Plaintiff's claims in this case:

> [Plaintiff] contends that the Agreement itself is not a general employment contract governing all aspects of her employment, but rather that it is concerned with a 'narrow set of confidentiality, non-solicitation, and inventions covenants designed to protect Google's intellectual property'...*[R]egardless of which topics form the bulk of the Agreement, plaintiff's at-will employment status is clearly a subject of the Agreement—*and a prominent one at that, as it constitutes the very first item of the Agreement...It cannot be said that plaintiff's at-will employment status is not a subject of the Agreement at issue here. ... *It is thus not possible to say that the Agreement's broad Arbitration Clause cannot be interpreted to cover plaintiff's statutory claims in this case.*

Tsatalis Decl., Ex. B (Order of the Court, January 30, 2006, 6-7, 9 (emphasis added)).

Despite the Court's clear consideration of Plaintiff's argument that her claims are beyond the scope of the arbitration provision and its ruling rejecting that argument, Plaintiff continues to belabor the point that the arbitration provision does not cover her claims. However, as Defendants explained in their original Motion, and as the Court ruled in its Order granting that Motion, the presumption in favor of arbitration applies not only to the enforceability of arbitration agreements, but also to the scope of such agreements. The United States Supreme Court has directed that, "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 945 (1995) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985)). Accordingly, "an order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986) (citation omitted); see also, First Options, 514 U.S. at 945 (issues will be deemed arbitrable unless the arbitration clause clearly does not include them).

Plaintiff's Complaint is based on Google's decision to restructure its Sales Division and reassign her to a new senior level position. Plaintiff alleges that Defendants should have kept her in her existing position or given her another position of her choice, and that their decision to reassign her was due to her pregnancy. Among other defenses, Defendants argue in their pending Motion for Summary Judgment that since she was an at-will employee, Plaintiff had no entitlement or guarantee to any particular position and Defendants' actions in reassigning her were permissible alterations to the terms of her employment. Tsatalis Decl., ¶ 11. See also DiGiacinto v. Ameriko-Omserv Corp., 59 Cal. App. 4th 629, 634-35 (1997) ("[T]he at-will presumption would surely apply to lesser quantums of discipline [than termination]. . . .") (quoting Scott v. Pacific Gas & Elec. Co., 11 Cal. 4th 454, 464-65 (1995)). In order to develop a foundation for this argument, Defendants questioned Plaintiff extensively about her at-will status at her deposition. Tsatalis Decl., ¶ 11. Plaintiff admitted, under oath, that she understood that she was not guaranteed any particular position at Google as an at-will employee. Id., Ex. C (Plaintiff's Dep. 107:10-13). Additionally, in support of their Motion for Summary Judgment as to Plaintiff's claim for intentional infliction of emotional distress, Defendants argue that Plaintiff's at-will status precludes this claim, citing Thawley v. Turtell, 736 N.Y.S.2d 2, 3 (N.Y. App. Div. 2001) ("the case law is clear that at-will agreements . . . cannot support a claim for tortious interference with existing contracts."). Tsatalis Decl., ¶ 11.

To compel arbitration of her claims, Plaintiff's "factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability." Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 721 (9th Cir. 1999). Given the defenses that Defendants have actually articulated and upon which they relied in their Motion for Summary Judgment, Plaintiff's claims not only "touch" subjects covered by the Employment Agreement, but are directly related to her status as an at-will employee as established in the Employment Agreement. Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys., 369 F.3d 645, 654 (2d Cir. 2004). As such, her claims are clearly covered by the Employment Agreement's arbitration provisions. Should this Court have any doubts as to whether these claims are related to the Employment Agreement, the United States Supreme Court directs that all such doubts be resolved in favor of arbitration. See First Options, 514 U.S. at 945.

**D.    Even If Plaintiff Had Attacked The Conscionability Of the Employment Agreement In A Timely Fashion, The Parties' Arbitration Agreement Is Enforceable Under California Law.**

Under California law, an agreement to arbitrate is fully enforceable unless the party opposed to arbitration can establish *both* procedural and substantive unconscionability. See Fittante v. Palm Springs Motors, Inc., 105 Cal. App. 4th 708, 723 (2003); Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1280 (9th Cir. 2006); Stirlen v. Supercuts, Inc., 51 Cal. App. 4th 1519, 1533 (1997) (both procedural and substantive unconscionability must "be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability"). Plaintiff cannot establish either prong of the unconscionability analysis.

**1.    The Arbitration Agreement Is Not Procedurally Unconscionable.**

In assessing procedural unconscionability, the court "focuses on whether the contract was one of adhesion." Soltani v. W. & S. Life Ins. Co., 258 F.3d 1038, 1042 (9th Cir. 2001). The analysis for determining this prong focuses on two elements, "oppression" and "surprise." Id. "'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." Fittante, 105 Cal. App. 4th at 722.

**a.    The Arbitration Agreement Is Not Oppressive.**

Plaintiff argues that the Employment Agreement is procedurally unconscionable because it was presented to her as an enclosure with her offer of employment, which conditioned her employment on her execution of the Employment Agreement. The California Court of Appeal has specifically refused to hold that pre-dispute arbitration agreements imposed as a condition of employment are *per se* unenforceable. Lagatree v. Luce, Forward, Hamilton & Scripps, 74 Cal. App. 4th 1105, 1128 (1999).

"'Oppression' arises from an inequality of bargaining power which results in no real negotiation and 'an absence of meaningful choice.'" Fittante, 105 Cal. App. 4th at 722; Stirlen, 51 Cal. App. 4th at 1532 (internal citations omitted). Plaintiff has not presented any evidence that demonstrates that she did not have the ability to negotiate the arbitration provision. To the contrary, in her deposition, Plaintiff admitted that she was heavily recruited to join Google and that she was able to successfully negotiate the number of stock options set forth in her offer letter. Tsatalis Decl., Ex. C (Plaintiff Dep. 90:8-15; 91:6-21; 92:6-25; 102:6-22; 105:10-15). When asked if she attempted to

negotiate any other provisions of the offer, she responded "not that I remember." <u>Id.</u> at 105:16-18.
Given her deposition testimony, Plaintiff cannot now claim that she had no ability to negotiate the
arbitration provision. Because Plaintiff cannot establish that the arbitration provision was a "take it or
leave it" proposition, she cannot establish that the Arbitration Agreement was oppressive.

> **b.    The Arbitration Agreement Clearly Notified Plaintiff That She Was
> Waiving Her Rights To The Judicial Forum.**

Plaintiff does not even argue that the arbitration provision was concealed so as to cause her to
be surprised by its presence. Indeed, the arbitration clause is written in clear, straightforward
language and is clearly marked in bold letters, **"Arbitration and Equitable Relief"**. Moreover,
California law is clear that Google was not obligated to alert Plaintiff to the existence of the arbitration
provision or to explain its meaning or effect. In fact, even where a fiduciary relationship exists
between the parties to an arbitration agreement, such as between a stockbroker and a customer, the
California Supreme Court has made clear that there is no requirement to "alert[] the customer to the
existence of an arbitration clause or explain[] its meaning and effect." <u>Rosenthal v. Great Western Fin.
Sec. Corp.</u>, 14 Cal. 4th 394, 425 (1996). Google was under no obligation to explain or even point out
the arbitration provision to Plaintiff. Under these circumstances, Plaintiff cannot establish procedural
unconscionability.

> **2.    The Arbitration Agreement Is Not Substantively Unconscionable.**

The Arbitration Agreement states that, "I agree that if I breach any such Sections [(2)
Confidential Information, (3) Inventions and (5) Returning Company documents], the Company will
have available, in addition to any other right or remedy available, the right to obtain an injunction from
a court of competent jurisdiction restraining such breach..." Such a clause, sometimes referred to as a
"carve out," is intended to address those situations where immediate injunctive relief is critical, such as
when a former employee is leaving the company with proprietary information and disclosing it to a
new competitive employer. In those instances, an employer cannot wait for the arbitration proceedings
to address the issue, but rather must seek the immediate and enforceable order of a court of law to
cease such activities while the underlying issues are arbitrated. Plaintiff grouses over this clause
because it is not a mutual grant of rights.

"While courts have defined the substantive element in various ways, it traditionally involves contract terms that are so one-sided as to 'shock the conscience.'" 24 Hour Fitness, Inc. v. Superior Court, 66 Cal. App. 4th 1199, 1213 (1998). In this case, the arbitration obligation is binding on both parties. The carve-out simply reflects the clear provision in the California Code of Civil Procedure allowing parties to an arbitration agreement to seek injunctive relief in appropriate circumstances.

### a.     The Carve-Out Provision Is Codified Under California Law.

The carve-out provision in the Arbitration Agreement cannot deem the Agreement unconscionable because it simply affirms Google's codified ability to seek provisional remedies from the court as set forth in California Code of Civil Procedure section 1281.8 (part of California's Arbitration Act). Section 1281.8(b) provides, in part: "A party to an arbitration agreement may file in the court in the county in which an arbitration proceeding is pending . . . an application for a provisional remedy in connection with an arbitrable controversy. . . ." Thus, even if the Arbitration Agreement was silent on the issue, both parties have a clear right of access to the court to seek injunctive relief in circumstances where "the award to which the applicant may be entitled may be rendered ineffectual without provisional relief." Cal. Civ. Proc. Code § 1281.8(b). This is the same standard for obtaining the injunctive relief that is mentioned in the Agreement. In fact, section 1281.8(a)(3) defines the terms "provisional remedy" to include "[p]reliminary injunctions and temporary restraining orders. . . ." The clear purpose of the carve-out and of section 1281.8 is to grant access to the emergency powers of the court to seek injunctive relief in situations where time is of the essence. Since this right has been codified under California law, it is afforded to both Google and Plaintiff regardless of the language of the Agreement.

Given the statutory carve-out set forth in section 1281.8(b), which renders the carve-out provision in the Agreement mutual, the Agreement certainly contains the "modicum of bilaterality" necessary to avoid a finding of unconscionability. Armendariz, 24 Cal. 4th at 119. It cannot be definitively said that basic fairness and requirements of mutuality are offended by this Agreement.

### b.     The Court May Sever The Carve-Out Provision And Enforce The Arbitration Agreement.

Even if the Court finds the carve-out to be lacking mutuality, that does not necessitate a finding that the entire agreement is substantively unconscionable. Rather, the California Civil Code permits

the Court to sever the offending provision in order to save the remainder of the agreement.  Cal. Civ. Code § 1670.5(a) ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may . . . enforce the remainder of the contract without the unconscionable clause. . . .").  The California Supreme Court has held that even where certain provisions of an arbitration agreement are improper, the agreement should be enforced and the questionable provisions severed from the agreement so long as those provisions do not permeate the entire agreement with unconscionability.  Armendariz, 24 Cal. 4th at 124 ("If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate.").  In Little v. Auto Stiegler, Inc., 29 Cal. 4th 1064 (2003), the California Supreme Court repeated its clear position that *unconscionable provisions must be severed from an arbitration agreement where possible in order to save and enforce the arbitration agreement.*  Id. at 1075-76.

        The overarching inquiry in the severability analysis is whether the interests of justice will be furthered by severance.  Armendariz, 24 Cal. 4th at 124.  Armendariz provided two reasons for severing illegal terms rather than voiding the entire contract. The first is to prevent parties from gaining undeserved benefit or suffering undeserved detriment as a result of voiding the entire agreement--particularly when there has been full or partial performance of the contract.  Second, the doctrine of severance attempts to conserve a contractual relationship if to do so would not be condoning an illegal scheme.  Id. at 124-125 (citations omitted).  Severing terms is appropriate where striking or removing the contract's unconscionable provisions, without augmenting the contract with additional terms, would cure any lack of mutuality.  Id. at 125.

        In this case, if the Court finds the carve-out provision to be unilateral, the carve-out can easily be severed to avoid providing Plaintiff with the undeserved benefit of forum shopping so that she can re-litigate her claims in court after she agreed to arbitration and vigorously litigated her claims in arbitration for the past eleven months.  If the carve-out is not severed and the Agreement is found to be unenforceable, then Plaintiff also would enjoy the undeserved and unfair advantage of previewing Defendants' defenses and litigation strategies in a "dress rehearsal."  Severing the carve-out provision would avoid causing Defendants the undeserved detriment of having wasted more than $60,0000 in

arbitration fees alone, and having to spend additional *substantial* resources, both in terms of time and money, re-litigating Plaintiff's claims. Severing the carve-out would not result in the augmentation or revision of any other terms to the contract. In fact, given that none of Plaintiff's claims concern trade secrets, confidential information, or inventions, severing the carve-out would have no impact whatsoever on Plaintiff or this litigation. Under these circumstances, and particularly given how long and actively the parties have litigated this case in arbitration and the funds Defendants have spent in the process, the "interests of justice" demand severing the carve-out in order preserve the agreement between the parties to the arbitral forum. Id. at 124.

### E.    Plaintiff's Displeasure With The Pace And Costs Of The Arbitration Proceeding Are Not Grounds To Invalidate Her Contractual Obligation To Arbitrate.

Plaintiff makes a baseless, albeit novel, argument that Defendants have "waived" their right to arbitration through their "misuse" of the arbitral forum. Plaintiff argues that because Defendants have vigorously litigated this case and the Arbitrator has afforded Defendants the opportunity to defend themselves against Plaintiff's allegations consistent with the American Arbitration Association's Employment Arbitration Rules and Mediation Procedures (the "AAA Rules") and applicable law, Defendants should have to give up their contractual entitlement to arbitration and litigate the case in court. While Plaintiff's purported reason for wanting to resume the case in court is her displeasure with the "procedural devices of litigation" that are available in the arbitration process, it is clear that the *full* panoply of "procedural devices of litigation" would be available to both parties in court. Moreover, even if Plaintiff's contention that Defendants engaged in delay tactics was true, and it is not, there is absolutely no authority for Plaintiff's argument that Defendants' litigation style and the Arbitrator's rulings result in a waiver of Defendants' right to arbitrate.

Plaintiff's cannot legitimately assert unnecessary delay just because this complex, ten-count case alleging sex, pregnancy and disability discrimination and retaliation under federal, state and New York city law, in addition to several tort claims, has not been fully and finally adjudicated in the five months since depositions began in November 2006. Indeed, it is unlikely that this case would have been fully adjudicated by now if it had remained in court. This is particularly true in light of Plaintiff's unavailability to participate in the case and the manner in which she has litigated the case.

Defendants have been extremely diligent in complying with the dates set by the Arbitrator and, in fact, were more eager than Plaintiff to commence discovery. Defendants propounded written discovery and a Deposition Notice on Plaintiff on August 1, 2006, *the first day that discovery opened* and before Plaintiff propounded any discovery. Tsatalis Decl., ¶ 12. Defendants set Plaintiff's deposition date for August, 15, 2006, just two weeks later. Id. Despite their immediate, best efforts to get discovery underway right away, Plaintiff delayed the commencement of discovery. First, Plaintiff's counsel refused to recognize any discovery propounded by Defendants until discovery was officially opened. Id. Second, Plaintiff purported to be unavailable for her deposition on the date that it was noticed, but failed to provide any explanation as to why she was unavailable or alternative dates. Id. Third, Plaintiff refused to respond to Defendants' written discovery in less than 30 days despite the clear terms of the California Code of Civil Procedure permitting responses to be required within ten days. Id. at ¶ 13; Cal. Civ. Proc. Code § 2025.280(a); see Aug. 3, letter from M. Tsatalis to I. Sunshine, attached as Ex. E to the Declaration of Joshua Solomon.

Given her claimed unavailability, Defendants served a second Deposition Notice on August 7, 2006 rescheduling Plaintiff's deposition for August 21, 2006. Tsatalis Decl., ¶ 14. Then, at the eleventh hour, long after Plaintiff's deposition had been noticed and confirmed and after the parties and the Arbitrator had spent considerable time working out the entire case schedule, Plaintiff announced that she was unavailable to appear for her deposition until November 2006 because of her latest pregnancy. Id. Although she tried to gain a tactical advantage by insisting that she be permitted to take Defendants' depositions while they sat on the sidelines awaiting her recovery, the Arbitrator recognized the fundamental unfairness of that proposition and stayed all depositions until Plaintiff was able to be deposed. Id. Defendants deposed Plaintiff on the very first day that she became available, which was November 6, 2006, more than two and one-half months after the date on which Defendants had originally noticed her deposition to take place. Id.

Thereafter, Plaintiff actually took more depositions than Defendants, including the depositions of two Google information technology professionals with no personal knowledge of the relevant facts underlying this case, Plaintiff's former secretary, and one of her subordinates, and then asking for even more time to question witnesses that she had spent full days deposing (which the Arbitrator denied).

Id. at ¶ 10. Defendants actually offered to forego more than ten depositions if Plaintiff would just agree not to call those individuals as witnesses or reference them at the arbitration. Id. It was Plaintiff who refused to do so, forcing Defendants to take the depositions of several additional witnesses, with the Arbitrator's express approval. Id. Plaintiff also propounded more written discovery than Defendants, propounding 198 Document Requests compared to the 77 requests that Defendants propounded and propounding 17 interrogatories when Defendants propounded only three. Id. It also was Plaintiff who has sought later dates for hearings and briefs, including demanding more than three weeks to oppose a simple discovery motion, insisting that Defendants' Motion for Judgment on the Pleadings not be filed or considered until months after Defendants sought and received permission to file it, and requesting a lengthy postponement of the briefing schedule for Defendants' Motion for Summary Judgment (which the Arbitrator denied). Id. at ¶ 15.

The fact that Defendants were permitted by the Arbitrator to file a Motion for Judgment on the Pleadings is not evidence of delay tactics. The Motion had no impact whatsoever on the case schedule, which was not amended in any way to accommodate the filing of the Motion. Id. at ¶ 16. The AAA Rules specifically provide that "[t]he arbitrator may allow the filing of a dispositive motion if the arbitrator determines that the moving party has shown substantial cause that the motion is likely to succeed and dispose of or narrow the issues in the case." AAA Rule 27. In fact, that Motion was successful in streamlining the case by obtaining an early dismissal of two specious causes of action against Defendant Armstrong which Plaintiff refused to dismiss voluntarily. Defendants certainly would have had the right to file both a motion for judgment on the pleadings and a motion for summary judgment if the case were pending in court. Id. Although Defendants did state on August 3, 2006 that they would seek court intervention if the arbitration was not conducted in accordance with California law, as required by the express terms of the Employment Agreement and the Court's Order enforcing that Agreement, Defendants never filed a motion requesting a stay of the arbitration, nor has the arbitration ever been stayed. Id. at ¶ 17. Instead, the Arbitrator promptly provided a ruling resolving that issue. The fact that Plaintiff disagrees with the Arbitrator's rulings is of no moment, and certainly is not an appropriate basis to seek to transfer the case back to court, although it does explain Plaintiff's true motivation in bringing this Motion. See Elevator Indus. Ass'n, Inc. v. Local 3,

I.B.E.W., A.F.L.-C.I.O., No. 84 CIV. 8638 (MJL), 1985 WL 1093, at *5 (S.D.N.Y. Apr. 16, 1985) ("[A] district court should not hold itself open as an appellate tribunal during an ongoing arbitration proceeding" since such review of arbitrator's preliminary rulings results in a waste of time and interruption of the arbitration proceedings).

Plaintiff's argument that Defendants engaged in dilatory tactics rings particularly hollow in light of statements by Plaintiff's counsel. Concurrent with her bemoaning that Defendants' motion to continue the trial date from September 2006 to February 2008 to accommodate the pregnancy of Defendants' lead trial counsel will delay the final adjudication of this case in arbitration, Plaintiff's counsel sought a stipulation from Defendants to transfer the case back to court. In her email asking whether Defendants would agree to transfer the case back to court, Plaintiff's counsel stated: "[w]e point out that doing so will likely result in the case being set down for trial in early 2008, which will have the effect of providing Respondents with the continuance they are now seeking in arbitration." Tsatalis Decl., Ex. D (emphasis added). Claimant's counsel's clear willingness to accept the delay in return for a stipulation to abandon the arbitral forum completely undermines Claimant's objections to any delay and clearly exposes her true motive for filing this motion, which is to seek a potentially more-hospitable venue. If a delay is acceptable in court, there is no reason why it is unacceptable in arbitration.

Indeed, the AAA Rules specifically authorize the Arbitrator to "extend any period of time established by these Rules" for good cause shown. AAA Rule 37. Defendants filed a written motion requesting a postponement of the arbitration hearing date to accommodate their lead counsel's pregnancy, Plaintiff opposed it, and the Arbitrator ultimately determined that Defendants had shown good cause and thus granted their request for a postponement consistent with her authority under the AAA Rules. As Defendants made clear in that motion, since Plaintiff is no longer employed with Google and is seeking only monetary relief, the postponement does not cause her any prejudice. Her damages will continue to accrue interest and she can thus be made whole regardless of when the arbitration takes place.

Lastly, even if Plaintiff's gross mischaracterizations were taken as true, her position is not legally sound. In <u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213 (1985), the United States Supreme Court stated that:

> We therefore are not persuaded by the argument that the conflict between two goals of the Arbitration Act—enforcement of private agreements and encouragement of efficient and speedy disputes resolution—must be resolved in favor of the latter in order to realize the intent of the drafters. The preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate. . . .

<u>Id.</u> at 221. As such, while economy and efficiency are policy reasons favoring arbitration, the primary duty of the Court is to effectuate the benefits of the parties' bargain. <u>Gov't of the United Kingdom v. Boeing Co.</u>, 998 F.2d 68, 73 (2d Cir. 1993) (quoting <u>Am. Centennial Ins. Co. v. Nat'l Cas. Co.</u>, 951 F.2d 107, 108 (6th Cir. 1991) ("a court is not permitted to interfere with private arbitration arrangements in order to impose its own view of speed and economy"); <u>Baesler v. Cont'l Grain Co.</u>, 900 F.2d 1193, 1195 (8th Cir. 1990) ("The Supreme Court has explicitly rejected the assertion that the overriding goal of the [FAA] is to promote the expeditious resolutions of claims.").

Based on the facts recited above and the clear legal authority undermining Plaintiff's argument on this issue, the Court should, once again, effectuate the parties' arbitration obligations and deny Plaintiff's Motion.

## III.    CONCLUSION

For the reasons set forth above and in their original Motion to Compel Arbitration, Defendants respectfully request that this Court deny Plaintiff's motion to lift the stay of litigation pending arbitration.

Dated: May 17, 2007

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: _____/s/_____
    Marina C. Tsatalis (MT-3069)
    WILSON SONSINI GOODRICH & ROSATI
    Professional Corporation
    1301 Avenue of the Americas, 40th Floor
    New York, NY 10019
    Telephone: (212) 999-5800
    Facsimile: (212) 999-5899
    Email: MTsatalis@wsgr.com

*Attorneys for Defendants*
*Google Inc. and Timothy Armstrong*

MARINA C. TSATALIS (MT-6494)
KORAY J. BULUT (KB-1074), *pro hac vice*
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: MTsatalis@wsgr.com

Attorneys for Defendants
GOOGLE INC. and TIMOTHY
ARMSTRONG

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTINA ELWELL,<br><br>      Plaintiff,<br><br>     v.<br><br>GOOGLE, INC., et al.,<br><br>      Defendants. | **ECF CASE**<br>**CASE NO.: 05-CV-06487 (DLC)**<br><br>**DECLARATION OF MARINA C. TSATALIS IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO LIFT THE STAY OF PROCEEDINGS PENDING ARBITRATION** |

I, Marina C. Tsatalis, declare:

1.    I am a member in the law firm of Wilson Sonsini Goodrich & Rosati, counsel of record for Defendants Google Inc. and Timothy Armstrong (jointly "Defendants") in this case. I am duly licensed to practice law in the State of New York. The matters set forth herein are based upon my personal knowledge and, if called as a witness, I could and would competently testify thereto.

2.    Attached hereto as Exhibit A is a true and correct copy of Plaintiff's counsel's August 25, 2005 letter responding to my request that Plaintiff arbitrate her claims in accordance with the terms of her Employment Agreement.

3.    Attached hereto as Exhibit B is a true and correct copy of this Court's January 30, 2006 Order and Opinion granting Defendants' Motion to Compel Arbitration and staying the proceedings pending arbitration.

4.    Catherine Harris was appointed as the Arbitrator in this case on June 6, 2006.

5.    Following a Case Management Conference in July 2006 and the determination of the case schedule, discovery opened in August 2006.

6.    Because of complications relating to another pregnancy, Plaintiff was unable to attend her deposition until November 2006, and thus the parties did not begin taking depositions until that month. Between November 2006 and the close of discovery on February 1, 2007, the parties took 26 depositions and completed their written discovery. Defendants then prepared and filed a comprehensive Motion for Summary Judgment with the Arbitrator, which is currently pending.

7.    To date, Defendants have paid $63,975 in fees to the American Arbitration Association and approximately $78,000 in costs for such items as copying charges, travel, postage and court reporter services, in addition to substantial attorneys' fees.

8.    Defendants produced Plaintiff's September 2000 offer letter to her in this case on October 13, 2006. Defendants produced the June 2004 draft letter reassigning Plaintiff to a different position to her in this case on November 3, 2006.

9.    On November 6, 2006, at the end of the first day of Plaintiff's deposition and before any other depositions had been taken in the case, Plaintiff's counsel took me aside and stated her intent to make a motion to get the case back into court, stating: "this is all just a dress rehearsal." Plaintiff's counsel also told me, for the first time, that she believed that the arbitration agreement is not enforceable.

10.    Plaintiff has taken fourteen depositions in this case, including the depositions of two Google information technology professionals, her former secretary, and one of her former subordinates. Plaintiff asked for more time to question witnesses that she had spent full days deposing, and the Arbitrator denied her request. Defendants offered to forego more than ten

depositions if Plaintiff would agree not to call those individuals as witnesses or reference them at the arbitration. Plaintiff refused to do so, resulting in Defendants having to take the depositions of several additional witnesses, with the Arbitrator's approval. Defendants have taken a total of twelve depositions in this case. Plaintiff has propounded 198 Document Requests and seventeen Interrogatories, she has requested and received more than 1,200 documents from Defendants, and she has filed a number of discovery motions. Defendants have propounded 77 Document Requests and three Interrogatories.

11.    Defendants filed a Motion for Summary Judgment as to all of Plaintiff's claims, and that Motion is currently pending before the Arbitrator. Among other defenses, Defendants argue in their pending Motion for Summary Judgment that since she was an at-will employee, Plaintiff had no entitlement or guarantee to any particular position and Defendants' actions in reassigning her were permissible alterations to the terms of her employment. In order to develop a foundation for this argument, I questioned Plaintiff extensively about her at-will status at her deposition. Plaintiff testified that she understood that she was not guaranteed any particular position at Google as an at-will employee. True and correct copies of the cited excerpts of Plaintiff's deposition transcript are attached hereto as Exhibit C. Additionally, in support of their Motion for Summary Judgment as to Plaintiff's claim for intentional infliction of emotional distress, Defendants argue that Plaintiff's at-will status precludes this claim, citing Thawley v. Turtell, 736 N.Y.S.2d 2, 3 (N.Y. App. Div. 2001) ("the case law is clear that at-will agreements . . . cannot support a claim for tortious interference with existing contracts.").

12.    Defendants propounded written discovery and a Deposition Notice on Plaintiff on August 1, 2006, before Plaintiff propounded any discovery. Defendants set Plaintiff's deposition date for August 15, 2006. Plaintiff's counsel refused to recognize any discovery propounded by Defendants until discovery was officially opened. Plaintiff also informed Defendants that she was unavailable for her deposition on the date that it was noticed, without explanation, and did not propose alternative dates.

13.    Plaintiff refused to respond to Defendants' written discovery in less than 30 days, despite Defendants' efforts to expedite discovery.

14.    Defendants served a second Deposition Notice on August 7, 2006 rescheduling Plaintiff's deposition for August 21, 2006.  After Plaintiff's deposition had been noticed and confirmed, and after the parties and the Arbitrator had spent considerable time working out the case schedule, Plaintiff announced that she was unavailable to appear for her deposition until November 2006 because of her latest pregnancy.  As a result, the Arbitrator stayed all depositions in the case until Plaintiff was able to be deposed.  Defendants deposed Plaintiff on the first day that she became available, which was November 6, 2006.

15.    Plaintiff has sought later dates for hearings and extended briefing schedules, including demanding more than three weeks to oppose a discovery motion, insisting that Defendants' Motion for Judgment on the Pleadings not be filed or considered until months after Defendants sought and received permission to file it, and requesting a lengthy postponement of the briefing schedule for Defendants' Motion for Summary Judgment, which request the Arbitrator denied.

16.    Defendants' Motion for Judgment on the Pleadings had no impact on the case schedule in this matter, which was not amended in any way to accommodate the filing of the Motion.  The Arbitrator granted the Motion with regard to two causes of action against Defendant Armstrong which Plaintiff refused to dismiss voluntarily.

17.    Defendants did not file a motion requesting a stay of the arbitration, nor has the arbitration been stayed in this case.

18.    Plaintiff's counsel sought a stipulation from Defendants to transfer the case back to court.  A true and correct copy of the email that I received from Plaintiff's counsel is attached hereto as Exhibit D.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

                                        /s/
                                    Marina C. Tsatalis

# EXHIBIT A



**SULLIVAN & WORCESTER**

Sullivan & Worcester LLP
One Post Office Square
Boston, MA 02109

T 617 338 2800
F 617 338 2880
www.sandw.com

August 25, 2005

**By Fax and Mail**

Marina C. Tsatalis, Esq.
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304-1050

Re:    Christina Elwell v. Google, Inc. et al.
       United States District Court for the Southern District of New York
       Civil Action No. 05-06487 (DLC)

Dear Ms. Tsatalis:

I am writing in reply to your letter of August 22, 2005.

I am surprised at your pronouncement that Ms. Elwell has signed an agreement with Google that obligates her to engage in binding arbitration over "any disputes relating to her employment with Google" given that the September 26, 2000 agreement you cited contains no such language. That agreement only provides for the arbitration of disputes concerning the interpretation, construction, performance or breach of the agreement itself. The civil action pending in the United States District Court involves no such issues. We therefore consider Google's position, and the various motions you have suggested filing, to be frivolous.

I note that the agreement appears to be an exhibit to some other document that Ms. Elwell does not have in her possession. We plan to obtain this document in discovery; however, if you believe that the document should affect our consideration of this issue, I would be happy to review a copy. In the meantime, however, Ms. Elwell will not agree to submit this matter to arbitration.

Very truly yours,

Ilene Robinson Sunshine

Direct line: 617 338 2928
isunshine@sandw.com

{B0434777; 1}
BOSTON   NEW YORK   WASHINGTON, DC

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
CHRISTINA ELWELL,                       :
                                        :
                    Plaintiff,          :        05 Civ. 6487 (DLC)
                                        :
          -v-                           :        OPINION & ORDER
                                        :
GOOGLE, INC. and TIMOTHY ARMSTRONG,     :
                                        :
                    Defendants.         :
                                        :
----------------------------------------X

APPEARANCES:

For Defendants Google, Inc. and Timothy Armstrong:
Adrian T. Deslmont
Wilson Sonsini Goodrich & Rosati
Professional Corporation
12 E. 49th Street
New York, NY 10017

Marina C. Tsatalis
Gary M. Gansle
Koray J. Bulut
Wilson Sonsini Goodrich & Rosati
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304

For Plaintiff Christina Elwell:
Ira K. Gross
Irene Robinson Sunshine
Joshua L. Solomon
Sullivan & Worcester LLP
One Post Office Square
Boston, MA 02109


DENISE COTE, District Judge:

     This Opinion considers defendants' motion to compel

arbitration in this case alleging illegal employment

discrimination and retaliation under Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the

New York State Human Rights Law, N.Y. Exec. Law § 290 et seq.

("NYSHRL"), and other claims.  Elwell challenges her demotion and reduction in pay during a high-risk pregnancy.  For the reasons stated below, the motion is granted.[1]

Background

    All facts are as alleged in the complaint unless otherwise noted.  Defendant Google, Inc. ("Google") hired plaintiff Christina Elwell ("Elwell") in 2000 as a member of its sales force.  Upon joining the company, Elwell signed an "Employment, Confidential Information and Invention Assignment Agreement" (the "Agreement").  The Agreement states:

> As a condition of my employment with Google, Inc.,
> its subsidiaries, affiliates, successors or assigns
> (together "the Company") and in consideration of my
> employment with the Company and my receipt of the
> compensation now and hereafter paid to me by Company, I
> agree to the following:
>     1.    At Will Employment.  I understand and
> acknowledge that my employment with the Company is for
> an unspecified duration and constitutes "at-will"
> employment.  I acknowledge that this employment
> relationship may be terminated at any time, with or
> without good cause or for any or no cause at the option
> either of the Company or myself, with or without
> notice.

(Emphasis supplied.)  The Agreement also contains an arbitration clause (the "Arbitration Clause"), which states:

> Arbitration . . . I agree that any dispute or
> controversy arising out of or relating to any
> interpretation, construction, performance or breach of
> this Agreement, shall be settled by arbitration to be
> held in Santa Clara County, California, in accordance
> with the rules then in effect of the American
> Arbitration Association.  The arbitrator may grant

---

[1] Plaintiff also moves to strike the defendants' reply brief.  That motion is considered at the end of this Opinion.

2

injunctions or other relief in such dispute or
controversy.  The decision of the arbitrator shall be
final, conclusive and binding on the parties to the
arbitration.  Judgement may be entered on the
arbitrator's decision in any court having jurisdiction.
The Company and I shall each pay one-half of the costs
and expenses of such arbitration, and each of us shall
separately pay our counsel fees and expenses.

(Emphasis supplied.)  The Agreement also contains a choice-of-law

clause specifying that it will be "governed by the laws of the

State of California."

Defendant Timothy Armstrong ("Armstrong") is Google's Vice

President for National Sales and was Armstrong's supervisor for

the entire period she worked at the company.  In 2003, Elwell has

promoted to the position of National Sales Director, in which she

managed Google's North American sales force.  In early 2004,

Armstrong praised Elwell's performance at a meeting of Google's

entire sales force.

In February 2004, Elwell became pregnant with quintuplets.

She told Armstrong of her pregnancy in late April 2004.  She also

informed him that she had medical issues related to the pregnancy

that would prevent her from traveling for some period of time.

Elwell informed Armstrong that she would be able to travel again

after she gave birth and discussed how her responsibilities would

be handled in the meantime.  In May, Elwell lost two of her

quintuplets.  At the end of that month, Armstrong informed Elwell

that her position had been eliminated and that she was to be

transferred to what the complaint describes as "a position in

Google's operations department that had virtually no relationship

to her former sales position, no direct tie to sales revenue, no

3

management responsibilities, and did not in any way use Elwell's
15 years of sales experience." Elwell alleges that Armstrong
told colleagues that she was being transferred because she could
not travel. Elwell subsequently agreed to a demotion to Director
of East Coast Sales, in which she would not have to travel by
plane, but Armstrong ultimately filled the Director of East Coast
Sales position with someone less qualified.

On June 4, Armstrong accused Elwell of talking to others at
Google about her situation. Elwell admitted that she had
expressed concern that Google's decisions regarding her
employment had been made on the basis of her pregnancy. The
following day, Elwell was fired. On June 22, an executive in
Google's California headquarters offered to rehire Elwell to the
operations position Armstrong had previously discussed with her.
The following day, Google's director of human resources informed
Elwell's husband that Elwell had been fired improperly; she told
Elwell the same thing the following day. Five days later, Elwell
lost the third of her quintuplets.

Elwell returned to Google on July 19. She alleges that the
position she was given was even more junior than the one
Armstrong had originally discussed with her. She also alleges
that Armstrong made rude comments, including that he was
uncomfortable having Elwell in the office and that he would
prefer she work at home.

Elwell's physician ordered her to stay at home beginning
July 21 because of her high-risk pregnancy; she notified Google

at that time that she required a disability leave of absence.
She received a commission check that was lower than usual and was
informed that the discrepancy was due in part to the fact that
she had received a lower performance rating than in previous
quarters.  While Elwell was on disability leave, she gave birth
to her surviving child.

On August 18, Elwell filed a discrimination complaint with
the federal Equal Employment Opportunity Commission ("EEOC").  On
May 18, 2005, the EEOC issued Elwell a Notice of Right to Sue.
Elwell filed her complaint in this Court on July 18, 2005,
alleging employment discrimination and retaliation under Title
VII against Google and Armstrong; discrimination and retaliation
under the NYSHRL against Google and Armstrong; aiding and
abetting discrimination and retaliation under the NYSHRL against
Armstrong; employment discrimination and retaliation under the
New York City Human Rights Law ("NYCHRL")against Google and
Armstrong; aiding and abetting employment discrimination under
the NYCHRL against Armstrong; and intentional infliction of
emotional distress and intentional interference with contractual
or advantageous business relations against Armstrong.  Defendants
filed their motion to compel arbitration on August 29, 2005.

Discussion

The law governing the enforceability of arbitration
agreements was recently discussed by this Court in Vaughn v.
Leeds, Morelli & Brown P.C., No. 04 Civ. 8391 (DLC), 2005 WL

5

1949468 (S.D.N.Y. Aug. 12, 2005).  The FAA was designed to
"ensure judicial enforcement of privately made agreements to
arbitrate."  <u>Dean Witter Reynolds Inc. v. Byrd</u>, 470 U.S. 213, 219
(1985).  The FAA represents "a strong federal policy favoring
arbitration as an alternative means of dispute resolution."  <u>JLM
Indus., Inc. v. Stolt-Nielsen SA</u>, 387 F.3d 163, 171 (2d Cir.
2004) (citation omitted).  Therefore, "under the FAA, 'any doubts
concerning the scope of arbitrable issues should be resolved in
favor of arbitration, whether the problem at hand is the
construction of the contract language itself or an allegation of
waiver, delay, or a like defense to arbitrability.'"  <u>Id.</u>
(quoting <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460
U.S. 1, 24-25 (1983)).  The FAA requires that a contract
provision to arbitrate disputes arising out of the contract
"shall be valid, irrevocable, and enforceable, save upon such
grounds as exist at law or in equity for the revocation of any
contract."  9 U.S.C. § 2.

Under the FAA, unless parties have unambiguously provided
for an arbitrator to decide questions of arbitrability, it is for
courts to decide whether the parties agreed to arbitrate.  <u>Contec
Corp. v. Remote Solution Co.</u>, 398 F.3d 205, 208 (2d Cir. 2005).
A court deciding a motion to compel arbitration must resolve four
issues:

> [1] whether the parties agreed to arbitrate; [2] ...
> the scope of that agreement; [3] if federal statutory
> claims are asserted, ... whether Congress intended
> those claims to be nonarbitrable; and [4] if ... some,
> but not all, of the claims are arbitrable, ... whether
> to stay the balance of the proceedings pending

6

arbitration.

JLM Indus., 387 F.3d at 169 (citation omitted).

Elwell argues both (1) that her claims do not arise under the Agreement and (2) that they do not fall within the scope of the Arbitration Clause. She contends that the Agreement itself is not a general employment contract governing all aspects of her employment, but rather, that it is concerned with "a narrow set of confidentiality, non-solicitation, and inventions covenants designed to protect Google's intellectual property." She also argues that her claims do not "aris[e] out of or relat[e] to the interpretation, construction, performance or breach of [the] Agreement," as specified in the Arbitration Clause.

Regardless of which topics form the bulk of the Agreement, plaintiff's at-will employment status is clearly a subject of the Agreement -- and a prominent one at that, as it constitutes the very first item of the Agreement. Plaintiff argues, however, that because at-will employment arises by operation of law unless modified by contract, the Agreement "confers no contractual rights or obligations on either party" regarding this aspect of her employment.

In deciding whether parties to a contract agreed to arbitrate a particular matter, "courts should generally apply state-law principles that govern the formation of contracts." Mehler v. Terminix Int'l Co., 205 F.3d 44, 48 (2d Cir. 2000). The contract, the overall validity of which is not in question,

7

specifies that it is to be governed by California law.[2]  Under
California law, an "employer and employee are free to agree to a
contract terminable at will or subject to limitations."  Foley v.
Interactive Data Corp., 47 Cal. 3d 654, 677 (1988).  California's
statutory presumption of at-will employment applies only "if the
parties have made no express oral or written agreement specifying
the length of employment or the grounds for termination."  Id.
It thus cannot be said that plaintiff's at-will employment status
is not a subject of the Agreement at issue here.

    Doubts regarding the scope of an arbitration clause should
be resolved in favor of arbitration.  Green Tree Fin. Corp. v.
Bazzle, 539 U.S. 444, 452 (2003).

> Once the court has determined the threshold issue of
> whether an arbitration agreement exists, and that the
> agreement is a broad one, . . . the court must compel
> arbitration unless it may be said with positive assurance
> that the arbitration clause is not susceptible of an
> interpretation that covers the asserted dispute.

Mehler, 205 F.3d at 49 (citation omitted).  The Arbitration
Clause in this case is undoubtedly broad.  Cf. Id., 205 F.3d at
46, 49 (characterizing an arbitration clause providing for
arbitration of "any controversy or claim between [the parties]
arising out of or relating to the Agreement" as "precisely the
kind of broad arbitration clause that justifies a presumption of
arbitrability" (emphasis supplied) (citation omitted)).

    "[I]n determining whether a particular claim falls within

———————————————

    [2] Defendants clearly assume in their memorandum of law that
California law should be applied to interpret the Agreement.
Plaintiff does not dispute this choice of law in her opposition.

8

the scope of the parties' arbitration agreement, [a court must] focus on the <u>factual allegations</u> in the complaint rather than the legal causes of action asserted." <u>Id.</u> at 48 (citation omitted) (emphasis supplied). Whether the actions of Google and Armstrong, its agent, in transferring Elwell to a different position and reducing her compensation were permissible alterations to the terms of the employment of an at-will employee or impermissible discrimination and retaliation are the questions that constitute the core factual dispute underlying all of plaintiff's allegations. It is thus not possible to say that the Agreement's broad Arbitration Clause cannot be interpreted to cover plaintiff's statutory claims in this case. The Second Circuit has indicated that Title VII claims may be arbitrated. See <u>Gold v. Deutsche Aktiengesellschaft</u>, 365 F.3d 144, 148 (2d Cir. 2004).

Given that plaintiff's claims against Armstrong of intentional interference with contractual or advantageous business relations and intentional infliction of emotional distress are premised on precisely the same facts as her antidiscrimination claims, they are likewise covered by the Arbitration Clause. Because Armstrong is Google's employee, the benefit of the Arbitration Clause extends to him as well. See <u>Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.</u>, 117 F.3d 655, 668 (2d Cir. 1997).

Finally, plaintiff has made a motion to strike the defendants' reply brief because it was untimely and because it is

9

accompanied by a document, a Google "Code of Conduct," that was submitted for the first time with the reply and was not operative at the commencement of plaintiff's employment in any event. Defendants dispute the timeliness issue, but appear to concede that the document submitted with the reply is inapplicable.[3] The brief is not stricken on timeliness grounds, but the accompanying document was not considered in the creation of this Opinion.

Conclusion

The defendants' motion to compel arbitration is granted. Plaintiff's motion to strike the defendants' reply brief is denied. Because all of plaintiff's claims are subject to arbitration, this action is stayed pending arbitration.

SO ORDERED:

Dated:     New York, New York
           January 30, 2006

                                    _____
                                              Denise Cote
                                    United States District Judge

---

[3] Defendants submit an earlier version of the Code of Conduct with the opposition to their motion to strike. This document was likewise not considered by the Court.

# EXHIBIT C

Page 1

C O N F I D E N T I A L

AMERICAN ARBITRATION ASSOCIATION

_____

**ORIGINAL**

CHRISTINA ELWELL,                          )
                                           )
                                           )
              Claimant,                    )
                                           )
        -against-                          )
                                           )
GOOGLE, INC. and TIMOTHY ARMSTRONG,        )
                                           )
              Defendants.                  )
                                           )
Case No. 74 160 00200 06 JOIB             )
_____  )


          Confidential videotaped deposition of
     CHRISTINA ELWELL held at the offices of Wilson
     Sonsini Goodrich & Rosati, 1301 Avenue of the
     Americas, New York, New York, on Monday,
     November 6, 2006, commencing at 10:12 a.m.,
     before Thomas DelVecchio, Legal Video
     Specialist, and James W. Johnson, Registered
     Professional Reporter and a Notary Public of
     the State of New York.

Page 90

1                    C. Elwell - Confidential

2          Q.    Do you remember what you said?

3          A.    What I can remember is that I was

4    leaving to go to Google.

5          Q.    Did they offer you anything to stay?

6          A.    I think she was upset I was leaving.  I

7    don't remember if she offered something.

8          Q.    Now, as I understand it, Mr. Armstrong

9    left Snowball.com before you did; is that right?

10         A.    Yes.

11         Q.    To go to Google?

12         A.    Yes.

13         Q.    Did you stay in touch with him between

14   the time he left Snowball and you went to Google?

15         A.    Yes.

16         Q.    Can you explain to me how it is that you

17   came to leave Snowball and become employed at

18   Google.

19               MS. SUNSHINE:   Objection.

20         A.    Meaning?

21         Q.    How did that happen?

22               MS. SUNSHINE:   Objection.

23         A.    I don't --

24         Q.    So you're working at Snowball.com?

25         A.    Right.

Page 91

1                    C. Elwell - Confidential

2         Q.    Mr. Armstrong left?

3         A.    Yes.

4         Q.    You're in touch?

5         A.    Yes.

6         Q.    Did he initiate a discussion with you

7    about an employment opportunity for you at Google?

8         A.    I'm not sure.  I mean, we were having

9    discussions, and he did present this opportunity.

10        Q.    At Google?

11        A.    Yes.

12        Q.    What was the opportunity as he described

13   it?

14        A.    An East Coast ad director job.

15        Q.    What did he say about it?

16        A.    You know, that it was a good

17   opportunity.

18        Q.    For you?

19        A.    Mm hmm.

20        Q.    Yes?

21        A.    Yes.

22        Q.    Sorry.  It's just that --

23        A.    Sorry.

24        Q.    -- with a court reporter the "mm hmm"

25   is --

***Confidential***

Page 92

1                    C. Elwell - Confidential

2        A.    Doesn't come out.

3        Q.    You're not sure months later what you

4    meant, so yes or no and --

5        A.    Yes.  Question?

6        Q.    Question.  Do you recall what else he

7    said about the job, if anything?

8        A.    That it was a great opportunity.

9        Q.    Anything else?

10       A.    That kind of encompasses a lot.

11       Q.    Did he try and persuade you to take the

12   job at Google?

13       A.    I think we were in discussions, so I

14   don't know how I would characterize those

15   discussions.

16       Q.    Well, was it your understanding that he

17   wanted you to come to Google?

18       A.    Definitely, yes.

19       Q.    And what was the basis for that

20   understanding?

21       A.    Our conversation.

22       Q.    In which he said?

23       A.    I don't know verbatim his words, but --

24       Q.    But words to the effect of what?

25       A.    I'd love to have you over here.

Page 102

1                    C. Elwell - Confidential

2    Google or not if you had to do it over again?

3        A.    I -- yeah, that would be hard for me to

4    answer, based on everything that's happened to me

5    there.

6        Q.    Prior to Mr. Armstrong approaching you

7    about following him to Google, had anyone else ever

8    contacted you regarding a job opportunity at

9    Google?

10       A.    No.

11       Q.    So Mr. Armstrong's invitation basically

12   was the first opportunity you had to work at

13   Google; is that right?

14       A.    Yes.

15       Q.    Was he successful in convincing you that

16   this was a good opportunity for you, that you

17   should go to Google?

18            MS. SUNSHINE:   Objection.

19       A.    I went to Google.

20       Q.    So yes?

21            MS. SUNSHINE:   Objection.

22       A.    Yes.

23       Q.    Did you interview with anybody at Google

24   before you were hired there?

25       A.    Yes.

***Confidential***

Page 105

C. Elwell - Confidential

1
2    A.    I'm assuming I did.  I don't remember
3  doing it, but I'm assuming I did.
4    Q.    Did you understand what you read?
5    A.    I can't remember back to that time if I
6  did.  I'm sure I would have asked questions if I
7  didn't.
8    Q.    Did you ask questions?
9    A.    I'm not aware of it.
10    Q.    Did you ask for any revisions to this
11  offer letter?
12    A.    We did discuss different shares.
13    Q.    Stock options?
14    A.    Yes, but I don't know if this was prior
15  to the offer letter or more verbal.
16    Q.    Okay.  Other than the shares did you
17  request any changes to the offer letter?
18    A.    Not that I remember.
19    Q.    Did you receive any other versions of an
20  offer letter?  Or was this the only one you
21  received?
22    A.    I remem -- I don't remember seeing,
23  receiving another version.
24    Q.    Did you understand that you were
25  accepting employment at Google based on the terms

***Confidential***

Page 329

1

2                    C E R T I F I C A T E

3

4    STATE OF NEW YORK   )

5                       )  Ss

6    COUNTY OF NEW YORK )

7

8            I, JAMES W. JOHNSON, a Registered

9    Professional Reporter and Notary Public within

10   and for the State of New York, do hereby

11   certify:

12           That CHRISTINA ELWELL, the witness whose

13   deposition is hereinbefore set forth, was duly

14   sworn by me and that such deposition is a true

15   record of the testimony given by such witness.

16           I further certify that I am not related

17   to any of the parties to this action by blood

18   or marriage and that I am in no way interested

19   in the outcome of this matter.

20           IN WITNESS WHEREOF I have hereunto set

21   my hand this 15th day of November 2006.

22

23           _____

             JAMES W. JOHNSON

24           Registration #01J05000925

             Commission Expires 9/4/2010

25

Global Deposition Services
212-867-7766

# EXHIBIT D

-----Original Message-----
From: Sunshine, Ilene Robinson [mailto:isunshine@sandw.com]
Sent: Tuesday, March 27, 2007 1:42 PM
To: Tsatalis, Marina
Cc: Pollack, Barry S.; Solomon, Joshua L.
Subject: meet and confer

Marina:

This e-mail constitutes our response to your proposal that we agree to continue the hearing in the Google case until February 2008. I also am writing to meet and confer with you regarding a motion that we plan to file in the United States District Court for the Southern District of New York.

While we are willing to agree to a continuance of a month or so, we cannot agree to a continuance of the five or six months requested by you. As you know, we have attempted from the outset to move the case along as quickly as possible and obtain the earliest possible hearing date. Since virtually the commencement of the action, Respondents have taken the opposite tack. Their stated purpose in compelling arbitration was to resolve this dispute expeditiously and economically; however, their litigation tactics have belied that. For one thing, Respondents have engaged in extensive, often wasteful motion practice. An example of this is seeking leave to move for judgment on the pleadings, despite the fact that such a motion is virtually meaningless in the arbitration context, and that the issues raised in that motion could have been resolved in the motion for summary judgment that you plan to file just a short time later. Such duplicative practices have added nothing of substance to the case and have served only to protract the litigation. In addition to excessive motion practice, Respondents have requested and taken an extraordinary number of depositions, many involving individuals whom Respondents knew had no first hand knowledge of any facts in dispute. Moreover, Respondents have consistently sought the latest possible hearing date. Indeed, if Respondents had refrained from exhaustive motion practice, taken fewer depositions and cooperated in securing a reasonable hearing date, the case would have been tried well before you are even scheduled to start your leave, and this issue of a further continuance would not have arisen at all.

In addition, we are troubled by the fact that you must have known for several months that you would be taking a leave shortly before the hearing date that took much time and effort to agree on. Despite this, you chose not to alert the arbitrator or us of your plans until mid-March. In the interim, you took many of the depositions in the case, which you now rely on in part as the basis for your claim that the case cannot be tried by any of the many other litigators in your firm. Had you addressed the potential issues earlier, another attorney (including Mr. Alvarez, the named lead counsel on Respondents' papers and a very senior attorney) could have assumed the role as active lead counsel.

1

As a result of the manner in which Respondents have conducted themselves in this arbitration, they have taken away the very advantages that arbitration is intended to provide. Having done so, there is no further reason for the case to be delayed in the arbitral forum. We therefore are notifying you that we will be filing a motion in the USDC for the Southern District of New York in which we request that the court reconsider its order referring this case to arbitration. The motion will be based on the grounds described above and on other grounds that have arisen during the course of the proceeding, including, but not limited to, Google's production of documents which establish that the non-disclosure agreement in which the arbitration clause appears was not intended to be a comprehensive employment agreement governing all of Ms. Elwell's employment rights. We would like to know whether Respondents assent to this motion. We point out that doing so will likely result in the case being set down for trial in early 2008, which will have the effect of providing Respondents with the continuance they are now seeking in arbitration.

May we have your response to this meet and confer within the next few days?

Ilene Sunshine


Ilene Robinson Sunshine
Attorney at Law

Sullivan & Worcester LLP
One Post Office Square
Boston, MA 02109

T 617 338 2928
F 617 338 2880
M 617 775 8190
isunshine@sandw.com
www.sandw.com

BOSTON   NEW YORK   WASHINGTON, DC


This message is intended to be confidential and may be legally privileged. It is intended solely for the addressee. If you are not the intended recipient, please delete this message from your system and notify us immediately. Any disclosure, copying, distribution or action taken or omitted to be taken by an unintended recipient in reliance on this message is prohibited and may be unlawful.

Communications from our firm may contain or incorporate federal tax advice. Under recently promulgated US Internal Revenue Service (IRS) standards, we are required to inform you that only formal, written tax opinions meeting IRS requirements may be relied upon by taxpayers for the purpose of avoiding tax-related penalties. Accordingly, this communication is not intended or written to be used, and it cannot be used, for the purpose of avoiding tax-related penalties under the Internal Revenue Code. Please contact a member of our law firm's Tax Department if you require a formal, written tax opinion that satisfies applicable IRS requirements, or if you have any other questions regarding federal tax advice.